The STATE of Ohio, Appellee,

v.

GALES, Appellant.

[Cite as *State v. Gales* (2001), 143 Ohio App.3d 55.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77209.

Decided April 16, 2001.

*William D. Mason*, Cuyahoga County Prosecuting Attorney, and *Jose Torres-Ramirez*, Assistant Prosecuting Attorney, for appellee.

*James R. Willis* and *Myron P. Watson*, for appellant.

TIMOTHY E. MCMONAGLE, Presiding Judge.

Defendant-appellant Maurice Gales appeals from his conviction and sentence entered after the trial court accepted his plea of no contest on three charges: possession of heroin in an amount greater than ten grams but less than fifty grams, a felony of the second degree under R.C. 2925.11; having a weapon under a disability, a felony of the fifth degree under R.C. 2923.13; and possession of criminal tools, a felony of the fifth degree under R.C. 2923.24. Gales argues that the court erred when it quashed various defense subpoenas, denied his motion to suppress evidence, and refused to order the state to divulge the identity of the confidential informant who allegedly provided the factual basis for the search warrant. Because probable cause did not exist to issue the search warrant, and the good-faith exception to the Fourth Amendment exclusionary rule in the execution of the warrant does not apply to the facts of this case, we sustain Gales's second assignment of error challenging the denial of his motion to suppress the evidence, vacate the judgment of conviction, and remand for further proceedings.

The disposition of this appeal centers upon the July 30, 1998 affidavit supporting the search warrant of Gales's address, 15801 Invermere, Cleveland, Ohio, which was based upon a confidential reliable informant's two controlled buys of heroin, a Schedule I drug. The first controlled buy allegedly occurred "several months" before the date of the affidavit at East 147th and Harvard Avenue:

"Several months ago, CRI [confidential reliable informant] informed affiant that he had a conversation with a suspect, who was Maurice Gales and that Gales stated to the CRI that he had some heroin. Gales is described as a black male, in his twenties, 5'10" in height, weighing 200 pounds. CRI contacted Affiant and stated that he would contact Gales. CRI and Affiant met at a predetermined location at East 147th and Harvard Avenue. CRI contacted Gales via cellular

telephone and was told by Gales that he had some heroin at the above described residence and he would drive over to the CRI's location with some heroin. "* * *

"Surveillance was set up at the above described premises and Gales exited the above described premises and drove off in a Pontiac Bonneville, maroon in color. Gales appeared a short time later at the CRI's location. CRI was met by the suspect and the CRI entered the suspect's vehicle. A brief conversation ensued and an exchange of purported heroin for a sum of money occurred. Affiant states that the CRI returned to the undercover vehicle. CRI handed the affiant packets of purported heroin. CRI was again searched and found to be free of any other drugs for money. Affiant observed Gales return back to the above described premises."

The second controlled buy allegedly occurred within three days of the date of the affidavit. Gales allegedly initiated the transaction with a call to the informant. The informant completed the transaction at, again, a location other than 15801 Invermere with an unidentified black male whose car was later found at Gales's address:

"Within the past seventy-two (72) hours, affiant has conducted surveillance of the above described premises at which time he has observed Gales going in and out of the above described premises.

"Affiant states that within the past seventy-two (72) hours he met with the CRI. CRI informed Affiant that Gales contacted him and stated that the CRI should go to an area near Superior and Euclid Avenue to make a drug transaction. * * * Affiant states that the CRI has provided information leading to narcotic related arrests, confiscation of drugs, money and other contraband and other information involving premises used to sell narcotics.

"CRI was issued an amount of United States currency, the serial numbers of which were recorded. CRI was driven to the vicinity of Superior and Euclid Avenue and was observed by affiant to approach and enter a vehicle described as a black, four door Chevy Celebrity, with a temporary tag.

"CRI was met at the vehicle by a black male. CRI informed affiant that CRI and the black male engaged in an exchange in the vehicle where CRI handed the black male a sum of "buy money" and was given packets of purported heroin. Shortly thereafter, affiant observed this vehicle in the driveway of the above described premises."

A Cuyahoga County Common Pleas Court judge authorized the requested search warrant, and, around 8:00 a.m. on July 31, 1998, Cleveland police officers, in conjunction with members of the Drug Enforcement Administration, executed the warrant, confiscating currency, a pager, various guns, heroin, and other

miscellaneous items. Gales was later charged with possession of heroin in an amount greater than ten grams but less than fifty grams, having a weapon under a disability, and possession of criminal tools.

Gales's attorney eventually filed separately a motion for the production of the alleged informant, challenging the existence and credibility of the alleged informant, and a motion to suppress, requesting both the suppression of the items seized in the alleged unlawful search and the return of these same items. After a *Franks* hearing,[1] the court denied Gales's motion to reveal the identity of the informant, concluding that Gales had failed to show that the identity of the informant was necessary to his defense, since the informant was neither a participant in the crime nor a witness to an element of the crime. At the hearing on the motion to suppress evidence, the state asked the court to deny discovery of the documents requested in various subpoenas issued to three Cleveland police officers associated with the search. Gales's attorney had requested various documents and records, including, for example, those setting forth the procedure used in conducting forcible entries of private homes, the number of homes entered forcibly in the previous 18 months, contacts with the informant, and dates of surveillance of the transactions at issue. After hearing, the judge denied the motion to suppress evidence and granted the state's request to quash the subpoenas.

On October 8, 1999, Gales withdrew his plea of not guilty and entered his plea of no contest. The court accepted the plea and found him guilty as charged in the indictment. In an order journalized November 3, 1999, the court imposed a prison term of two years on the possession offense and six months on the weapons and criminal tools offenses. From this order, Gales filed a timely appeal.

Gales presents three assignments of error for our review:

"I. The court erred when on the state's motion it in effect quashed various defense subpoenas and when the court failed to enforce the subpoenas when specifically requested to do so.

"II. The court erred when it denied the appellant's motion to suppress.

"III. The court erred when, for reasons that cannot be defined, he [*sic*] refused to require the state to divulge the identity of the alleged informant who

---

1. *Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (addressing issue of when a defendant is entitled, under the Fourth Amendment, to a hearing to challenge the veracity of the facts set forth in a warrant affidavit after the warrant has been issued and executed); see, also, *Roviaro v. United States* (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (regarding disclosure of the identification of the confidential informant).

was said to have been the purchaser (and thus a participant) in the alleged drug sales centralized in the case against the appellant."

His second assignment of error is dispositive of this appeal.

Gales argues that the affidavit lacked sufficient factual support to issue the warrant to search the premises. When "determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332–2333, 76 L.Ed.2d 527, 548–549. In reviewing "the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant." *George, supra,* at paragraph two of the syllabus. Instead, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed," and it "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*

In addition, an affidavit for a search warrant must contain timely information. *State v. Jones* (1991), 72 Ohio App.3d 522, 526, 595 N.E.2d 485, 487–488. " '[P]roof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case.'" *Id.,* quoting *Sgro v. United States* (1932), 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260, 263.

" 'Because probable cause to search "is concerned with facts relating to a presently existing condition," * * * there arises the "unique problem of whether the probable cause which once existed has grown 'stale.' " '" *United States v. Spikes* (C.A.6, 1998), 158 F.3d 913, 923. * * * The key issue is whether the alleged facts 'justify the conclusion that the subject contraband is probably on the person or premises to be searched.' [*State v. Jones* (1991), 72 Ohio App.3d 522, 526, 595 N.E.2d 485, 488.] Variables to consider include how perishable the item to be seized is and whether the information in the affidavit relates to a single isolated incident or a protracted ongoing criminal activity. *State v. Floyd* (Mar.

29, 1996), Darke App. No. 1389, unreported [1996 WL 139787]." *State v. Barnes* (Mar. 16, 2000), Franklin App. No. 99AP–572, unreported, 2000 WL 279286.

As noted above, the asserted probable cause forming the basis of the search warrant was two controlled buys that *did not occur* at the 15801 Invermere Avenue address. With regard to the first off-site controlled buy, Gales's single, alleged admission to the CRI that "he had some heroin" at that address and the police surveillance of that address were the only means of linking the possible presence of heroin to that address. Given the perishable nature of the contraband at issue, there is no reason to believe that one might find heroin at the address three months after this alleged admission and single, isolated surveillance. See *State v. Lahmers* (Feb. 14, 1995), Tuscarawas App. Nos. 94AP080055, 94AP080056, unreported, 1995 WL 156355. Thus, standing alone, probable cause had grown stale.

With regard to the second off-site controlled buy, the affidavit supports the conclusion that Gales assumed the role of disclosing the location where the informant could purchase heroin. The affidavit cannot be reasonably read to show that the unidentified black male involved in the transaction transported the heroin at issue to the informant from 15801 Invermere, because nothing in the affidavit ties the black Chevy Celebrity to the address at a closely related time before the sale. Moreover, while the affiant avers that he observed Gales "going in and coming out of" 15801 Invermere within a seventy-two-hour period, nothing connects this with ongoing criminal activity. Thus, according great deference to the judge authorizing the search warrant, the incidents described in the affidavit do not provide a substantial basis on which to conclude that probable cause existed to issue the warrant.

We are mindful of the rule that "[t]he Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *George, supra,* 45 Ohio St.3d 325, 544 N.E.2d 640 at paragraph three of the syllabus, following *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677. The reviewing court must confine its good-faith inquiry to the four corners of the affidavit, and the court presumes that the officer who claims good-faith reliance has a certain minimum level of knowledge of what the law requires. *State v. Klosterman* (1996), 114 Ohio App.3d 327, 333, 683 N.E.2d 100, 103–104. The test for good-faith exception is " 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.' " *State v.*

*Jones* (1991), 72 Ohio App.3d 522, 528, 595 N.E.2d 485, 489, quoting *Leon,* 468 U.S. at 922–923, 104 S.Ct. at 3420, 82 L.Ed.2d at 698, fn. 23.

█ The good-faith exception to the exclusionary rule does not apply here. Nothing within the four corners of the affidavit, closely related to the time of the issuance of the warrant, showed a fair probability that heroin would be found at 15801 Invermere. Thus, it rendered official belief in the existence of probable cause entirely unreasonable. *George,* 45 Ohio St.3d at 331, 544 N.E.2d at 646–647, citing to *Leon, supra,* 468 U.S. at 923, 104 S.Ct. at 3420–3421, 82 L.Ed.2d at 698–699. Gales's second assignment of error is sustained.

█ Although it is not essential to our resolution of this appeal, even if we assume that the affidavit, as written, supports a finding of probable cause, the trial court should have allowed the discovery of the informant's identity as Gales argues in his third assignment of error.

█ The state must reveal the identity of an informant to an accused "when the testimony of the informant is vital to establish an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." *State v. Williams* (1983), 4 Ohio St.3d 74, 4 OBR 196, 446 N.E.2d 779, syllabus; accord, e.g., *State v. Richard* (Sept. 7, 2000), Cuyahoga App. No. 76797, unreported, 2000 WL 1281254. The disclosure of an informant's identity requires a balancing of competing interests (i.e., the accused's right to confront his or her accusers and the state's right to preserve an informant's anonymity), but "the balance tilts in favor of disclosure" when the informant's "degree of participation" is such that the informant is essentially a state's witness. *Richard, supra;* see *State v. Feltner* (1993), 87 Ohio App.3d 279, 282, 622 N.E.2d 15.

As the affidavit shows, the informant is the only witness to the first controlled buy, which is alleged to have involved both Gales and heroin removed from his residence; the affiant does not aver that he or another police officer witnessed the sale. See *State v. Phillips* (1971), 27 Ohio St.2d 294, 300–301, 56 O.O.2d 174, 177, 272 N.E.2d 347, 351–352; cf. *State v. White* (Jan. 4, 1996), Cuyahoga App. No. 68424, unreported, 1996 WL 4036 (police verified informant's information). In addition, the informant was the only person privy to the alleged call from Gales setting up the specifics of the second controlled buy. The affiant witnessed and identified only a "black male" driving a vehicle unlike the one alleged to have been driven by Gales in the first controlled buy. The affiant did not link the second vehicle to Gales, except to the extent that it showed up at 15801 Invermere shortly *after* the second transaction.

As the United States Supreme Court stated in *Roviaro v. United States* (1957), 353 U.S. 53, 64–65, 77 S.Ct. 623, 630, 1 L.Ed.2d 639, 647, in which it held that the

lower courts had erred in refusing to order the government to disclose the identity of a confidential informant material to the defendant's case:

"This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses. * * * We conclude that, under these circumstances, the trial court committed prejudicial error in permitting the Government to withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure."

Similarly, we conclude in this case that the court abused its discretion in refusing to order the state to disclose the informant's identity for the reasons that the informant would be both helpful and beneficial to Gales in preparing or making his defense to the charges against him. See *Feltner*, 87 Ohio App.3d at 282, 622 N.E.2d 15, 17–18.

In light of this conclusion, Gales's first and third assignments of error are rendered moot. App.R. 12(A)(1)(c). Therefore, the judgment of conviction and sentence is vacated, and this matter is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

James D. Sweeney, J., concurs.

Michael J. Corrigan, J., dissents.

Michael J. Corrigan, Judge, dissenting.

I respectfully dissent from the majority decision, as I would find that the search warrant was supported by probable cause or, in the alternative, that the good-faith exception to the exclusionary rule was applicable. To find, as does the majority, that the police officers who executed the search warrant were "entirely unreasonable" in their official belief in the existence of probable cause is a distortion of the record and ignores the facts and practicalities that were presented to the officers at the time of the execution of the warrant.

The affidavit supporting the search warrant in this case, which was sworn to by a detective with the Cleveland Police Department with extensive training in numerous areas of drug enforcement, including the recognition of controlled substances, methods of packaging controlled substances, and the detection of narcotics trafficking, contained the following averments:

"- A confidential reliable informant (CRI) contacted the affiant and informed him that he was told by the appellant that he had quantities of heroin at the

premises described in the warrant. The appellant offered to meet the CRI at a predetermined location near East 147th Street and Harvard Avenue to sell him a quantity of heroin. The same CRI had in the past provided law enforcement personnel with information leading to narcotic related arrests, confiscation of drugs, money, and other contraband and other information involving premises used to sell narcotics.

"- Prior to the commission of the first heroin sale to the CRI upon which the warrant was based the affiant witnessed the appellant leave the premises at 15801 Invermere and drive to the location of the transaction. The same vehicle was witnessed returning to the premises described in the search warrant immediately after the transaction. The CRI had been searched prior to the transaction and found to be free of any illegal drugs. Immediately after the transaction the CRI handed the affiant packets of purported heroin which he had purchased from the appellant.

"- In the seventy-two (72) hour period immediately preceding the preparation of the affidavit, the affiant was told by the CRI that he had again been contacted by the appellant to arrange a heroin sale, this time at a location near Superior and Euclid Avenues.

"- The CRI was driven by the affiant to the predetermined location as arranged by the appellant.

"- The affiant witnessed the CRI enter a distinctively marked car, which was observed returning to the premises described in the warrant soon after the transaction had occurred.

"- Upon returning to the affiant's undercover police vehicle, the CRI informed the affiant that he had purchased heroin from the driver of the vehicle. The CRI, who had been searched prior to exiting the undercover vehicle, handed packets of heroin to the affiant which had been purchased from the appellant.

"- During the seventy-two (72) hour period immediately preceding the issuance of the search warrant, the affiant conducted surveillance of the premises described in the warrant at which time he observed the appellant repeatedly going in and out of the premises described in the warrant."

Given the above facts, which were properly attested to by an experienced, highly trained narcotics detective, I am at a loss to understand how the majority is able to conclude that given all the circumstances set forth in the affidavit presented to the judge who signed the search warrant, there was not a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates* (1983), 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332–2333, 76 L.Ed.2d 527, 548–549. I also must admit to being somewhat perplexed at the majority's emphasis on the fact that the drugs were not actually being sold out of

the appellant's house. On both occasions where the affiant observed the informant consummate a heroin transaction with the appellant, the appellant was observed by police surveillance returning to the premises described in the warrant immediately after the sale. Prior to the first controlled buy, the appellant was also observed by police surveillance leaving the premises described in the warrant shortly before meeting the informant at the predetermined location.

Courts in this state have held that a detailed affidavit relating to a controlled buy is sufficient to establish probable cause. *State v. Freeman* (1986), 32 Ohio App.3d 42, 44, 513 N.E.2d 1354, 1356; *State v. Taylor* (June 2, 1999), Ross App. No. 98CA2451, unreported, 1999 WL 359720; *State v. Fisher* (Nov. 1, 1990), Cuyahoga App. Nos. 57505 and 57506, unreported, 1990 WL 166460; *State v. Brewer* (July 25, 1984), Hamilton App. No. C–830756, unreported, 1984 WL 6707.

Recent Fourth Amendment decisions teach that to establish probable cause for issuance of a search warrant on the basis of information furnished by an informant, the applicant for the warrant must provide evidence of the informant's reliability. See, *e.g., United States v. Allen* (C.A.6, 2000), 211 F.3d 970 (en banc); *United States v. Williams,* 224 F.3d 530 (C.A.6 2000). The affidavit in the case at bar, as we have seen, attested to the informant's past reliability and described two recent purchases of heroin from the appellant. The independent corroboration of the informant's allegations through the controlled buy tended to confirm the informant's story. *Id.*

A magistrate is generally granted broad discretion to determine whether an affidavit contains sufficient information to justify a finding of probable cause. *United States v. Ventresca* (1965), 380 U.S. 102, 108–109, 85 S.Ct. 741, 745–746, 13 L.Ed.2d 684, 688–689. The Ohio Supreme Court has made it clear that warrants are to be treated preferentially and, therefore, great deference should be shown to the magistrate's decision. *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640. Whether at the trial or the appellate level, judicial scrutiny of the magistrate's decision does not take the form of a *de novo* review. Rather, the role of the reviewing court is only to ensure that the magistrate had a "substantial basis" for concluding that probable cause existed. *Id.* at 329, 544 N.E.2d at 644–645. Doubtful or marginal cases are to be resolved in favor of upholding the warrant. *Id.* at 330, 544 N.E.2d at 645–646, citing *Gates,* 462 U.S. at 237, 103 S.Ct. at 2331, 76 L.Ed.2d at 547, fn. 10.

The majority, under the guise of "timeliness," in effect imposes a new requirement on law enforcement officials seeking a search warrant for premises where there is suspected contraband or other evidence of a crime requiring that they present evidence of illegal activity actually occurring on the premises. The majority opinion would also seem to require that magistrates presented with an

affidavit in support of a search warrant disregard circumstantial evidence in determining the existence of probable cause. Under the majority's new standard, if the appellant had merely pulled out of his driveway and driven to the end of the street to sell heroin (rather than driving a few extra blocks) and returned home immediately thereafter, all the while under police surveillance, there still would have been an insufficient link to the possible presence of heroin at his home address to justify a search warrant. As observed in *State v. Jenks* (1991), 61 Ohio St.3d 259, 272, 574 N.E.2d 492, 502, "Circumstantial evidence and direct evidence inherently possess the same probative value."

In *United States v. Wells* (C.A.8, 2000) 223 F.3d 835, 839, the court stated:

"When reviewing the sufficiency of an affidavit to support a finding of probable cause, we must consider the totality of the circumstances. *United States v. Searcy*, 181 F.3d 975, 981 (8th Cir.1999). Further, we note that probable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence. *Id.*" (Emphasis added.)

The surveillance of the appellant departing from the premises immediately prior to the controlled buys and returning thereto immediately after the controlled buys was clearly sufficient circumstantial evidence to support a finding of probable cause in this case. The majority's conclusion to the contrary represents a departure from existing jurisprudence on this issue.

The majority correctly summarizes the standard for applying the good-faith exception to the exclusionary rule, but then, in a result-driven "analysis," concludes that the exception is not applicable to the instant case. There is absolutely no evidence anywhere in the record that the officers who executed the search warrant in this case believed that "the search was illegal despite the magistrate's authorization." Given the fact that the officers presented a five-page affidavit documenting their controlled buys and the extensive controls used therein and that there is no evidence that the affidavit contained any misstatements or inaccuracies, there is virtually no possibility that they did not believe that the search was legal at the time that it was conducted, or that they did not believe that a fair probability existed that heroin would be found at 15801 Invermere.

The majority opinion's dicta on the issue of whether the trial court should have compelled the discovery of the identity of the CRI also misconstrues the facts and misapplies relevant case law as they are applicable to the instant case.

The appellant's indictment was based solely on evidence found during the police's execution of the search warrant. The informant's role was limited to that of providing the basis for probable cause. This does not provide a basis for disclosure. *State v. Parsons* (1989), 64 Ohio App.3d 63, 67–69, 580 N.E.2d 800,

803–805; *State v. Taylor* (June 2, 1999), Cuyahoga App. No. 98CA2451, unreported, 1999 WL 359720; *State v. Pollard* (Mar. 25, 1994), Ashtabula App. No. 93–A–1767, unreported, 1994 WL 102456; *State v. Pettis* (Oct. 17, 1991), Cuyahoga App. No. 59174, unreported, 1991 WL 211969.

The defendant bears the burden of establishing the need for learning an informant's identity. *State v. Parsons,* 64 Ohio App.3d at 69, 580 N.E.2d at 804. A trial court's decision denying a request for disclosure should not be reversed absent an abuse of discretion. *State v. Feltner* (1993), 87 Ohio App.3d 279, 282, 622 N.E.2d 15, 17–18. A court does not abuse its discretion unless it acts with an unreasonable, arbitrary, or unconscionable attitude. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148–149.

It is simply not accurate that learning the identity of "the informant would be both helpful and beneficial to Gales in preparing or making his defense to the charges against him." The informant in this case was not "essentially a state witness," and his testimony was not necessary to establish the elements of the three counts contained in the indictment. The charges against the appellant did not arise out of the two controlled buys made by the informant. Rather, the charges—possession of heroin, having a weapon while under disability and possession of criminal tools—arose out of the discovery of narcotics and other contraband during the search of the appellant's home. The informant could not have been a witness, as there is no evidence that he had any knowledge whatsoever of the crimes with which the appellant was actually charged or even that he was ever at 15801 Invermere.

The excerpt of *Roviaro v. United States* (1957), 353 U.S. 53, 64–65, 77 S.Ct. 623, 629–630, 1 L.Ed.2d 639, 647–648, cited in the majority opinion does not support the result reached by the majority, as the Supreme Court specifically held that it was error for the trial court to withhold the identity of the undercover employee because the "Government's informer was the sole participant, other than the accused, *in the transaction charged.*" (Emphasis added.) The informant herein was not even a participant, much less the sole participant, in the transaction charged.

Because the search warrant issued in this case was based on an affidavit that showed, at the very least, a fair probability that heroin and other contraband would be found at the appellant's residence, and because the good-faith exception to the exclusionary rule would apply even if the search warrant was legally defective, I would overrule all assignments of error and affirm the judgment of the trial court.