JOURNAL ENTRY AND OPINION
This case is an appeal from an order of Judge Daniel O. Corrigan that suppressed evidence seized through a search warrant because the State failed to produce a confidential informant for an in camera interview. We reverse and remand.
Sometime in the week preceding April 10, 2000, a detective from the Cleveland Police Department's Narcotics Unit averred he received a tip from a confidential informant ("CI") stating that a black male known as "Pee Wee" was selling crack cocaine from his residence at 16611 Westfield Avenue. The CI offered to make a controlled buy of crack cocaine at that location. He was searched and found to be free of any contraband, drugs or money, was seen to enter the residence with "buy money" provided by the police, exit a short time later, was met by the detective at a "pre-determined location" and again searched and found to have only what was later tested and confirmed as a rock of crack cocaine in his possession. The detective then applied to Judge Patricia Cleary for a warrant to search the suspected residence, which she signed on April 10, 2000. The facts upon which the judge based her finding of probable cause were contained in a supporting affidavit executed by the detective and attached as Exhibit A.
Members of the Narcotics Unit executed the search warrant on April 13, 2000, and discovered quantities of crack cocaine and marijuana, in addition to finding $119 in cash, two loaded pistols, a cell phone and a pager. Dimmings was indicted on the following counts in the Cuyahoga County Court of Common Pleas:
 *Preparation of Drugs for Sale (marijuana), in violation of R.C. 2925.07, with a juvenile specification under R.C. 2925.01(BB);
 *Preparation of Drugs for Sale (crack cocaine), in violation of R.C. 2925.07, with a juvenile specification under R.C. 2925.01(BB);
 *Possession of Criminal Tools, in violation of R.C. 2923.24 (in reference to the guns, pager, cell phone and money recovered during the search); and,
 *Possession of Drugs (crack cocaine), in an amount more than twenty five grams but less than one hundred grams, in violation of R.C. 2925.11.
He pleaded not guilty to all charges and filed a motion to suppress the evidence obtained, as well as a "Motion for Disclosure of Confidential Informant," through which he requested that the State produce the name and location of the CI who participated in the controlled buy of crack cocaine. He argued that the CI did not exist, or if he did, he would not testify to the event of the buy as set forth in the detective's affidavit.
At the hearing, Dimmings modified his request for disclosure to include only an in camera interview with the judge, so that the judge could satisfy himself that the CI was the person who took part in the events justifying the issuance of the search warrant, and was not an imaginary CI fabricated by the detective to falsely support it. When the judge ordered the State to produce the CI for an in camera interview, the State indicated that it would not do so under any circumstances and the judge granted Dimmings's motion to suppress the evidence.
The State claims one assignment of error:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE WHEN IT WAS BASED ON THE STATE'S REFUSAL TO DISCLOSE THE IDENTITY OF A CONFIDENTIAL INFORMANT.
The standard of review for a case involving a confidential informant is whether the judge abused his discretion in ordering or refusing to order the State to disclose the identity of the person.[1] The term "abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary or unconscionable.[2]
The State refused to produce the CI for in camera review based on the privilege to keep the identity secret.
 What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. * * * The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.[3]
This privilege, however, is not absolute and may be overcome where the CI's testimony is either: (1) vital to establishing an essential element of the offense charged; or (2) helpful or beneficial to the accused in preparing a defense.[4] If the informant's degree of participation is such that the informant is essentially a State's witness, the balance tilts in favor of disclosure. However, where disclosure is not helpful to the defense, the prosecution need not reveal the informant's identity.[5]
"The question of disclosure of a confidential informant becomes a balancing of competing interests: the defendant's right to confront his or her accusers, and the state's right to preserve the anonymity of informants.[6]
 A defendant who seeks to overcome the presumption of validity accorded a warrant affidavit by making a substantial preliminary showing of a knowing, intentional, or reckless falsity, has, under [the authority of Franks v. Delaware[7]], the task of supporting his allegations by more than conclusional accusations, or the mere desire to cross-examine. Instead, a challenge to the factual veracity of a warrant affidavit must be supported by an offer of proof which specifically outlines the portions of the affidavit alleged to be false, and the supporting reasons for the defendant's claim. This offer of proof should include the submission of affidavits or otherwise reliable statements, or their absence should be satisfactorily explained.[8]
The defendant bears the burden of establishing the need for learning the informant's identity.[9]
Dimmings asserts that the CI does not exist, and, therefore, producing him for an in camera review was necessary to validate the assertions contained in the detective's affidavit. As a threshold matter, however, Dimmings has not carried his burden of proof to justify such production. Other than his lawyer's bare allegation at the hearing that the CI is a figment of the detective's imagination, there is absolutely no evidence in the record to substantiate this claim. Further, Dimmings was charged with drug possession offenses and possession of criminal tools, but he was not charged with any criminal offense in connection with the controlled buy. As such, the testimony of the CI will be completely irrelevant to the defense of Dimmings's charges on their merits. While he asserts that a successful attack on the search warrant will constitute a "defense" to his charges, this is not so.
 We must remember also that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the truth. The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment. * * * If the motion to suppress is denied, defendant will still be judged upon the untarnished truth.[10]
While we acknowledge the existence of State v. Gales,[11] relied upon by Dimmings, we cannot agree that its facts are applicable. In that case, this court found that a judge erred in denying disclosure of a CRI's identity where the CRI made controlled buys off-site, leading to the search of the defendant's home, which resulted in the seizure of drugs and other property. We cannot agree, however, that a CI participating in a controlled buy with a suspected drug dealer constitutes a material witness in the resulting case stemming from the defendant's possession of other quantities of illegal drugs. Under the rationale ofIllinois v. McCray, supra, for purposes of a suppression hearing, the CI is not an accuser of a defendant, the police officer-affiant is. Absent some substantial outside evidence to suggest that the affidavit of the officer is false or fraudulent, no CI disclosure should be ordered. We find persuasive the case of State v. Williams,[12] in which the court stated,
 The issue for determination is not the guilt or innocence of the accused but whether the warrant was issued upon oath or affirmation establishing probable cause to believe that evidence of criminal activity will be produced by the search to be authorized by the warrant. In that context, the testimony of an informant whose information and credibility were vouched for by officers under oath is not material to the determinative issue of the existence of probable cause. The evidence presented by officers on the face of their application and affidavit is determinative.
Accordingly, Dimmings has not shown, by any evidence whatsoever, that the credibility of the detective should be questioned, or that the identity of the CI will aid him in defense of the charges he is facing. The judge's order, unsupported by any evidence, was arbitrary. It was an abuse of discretion to order that the State produce the CI for an incamera interview to verify his existence, and to grant Dimmings's motion to suppress as a sanction for failure to do so.
Judgment reversed and remanded.
 EXHIBIT A.
"1. Within the past week, affiant received information from a Confidential Informant (CI) that drugs, specifically crack cocaine were being sold from the above described premises. CI indicated that the person selling the drugs was a black male CI knew as "Pee Wee." CI indicated that CI could purchase an amount of crack cocaine for members of the Narcotics Unit.
2. Within the past week affiant and members of the Narcotics Unit met the CI at a pre-determined location. CI was searched and found to be free of any drugs, money, and/or contraband. CI was given an amount of U.S. Currency, the serial numbers of which had been previously recorded.
3. CI was observed by members of the Narcotics Unit to go to the above-described premises and subsequently enter said premises via the front door. After a short period of time CI was observed to exit said premises via the front door.
4. CI was met by affiant at a pre-determined location. CI surrendered an amount of suspected crack cocaine to affiant. CI was again searched and found to be free of any drugs, money, and/or other contraband.
5. CI stated that CI entered the premises and asked a black male who CI knew as "Pee Wee," for an amount of crack cocaine, and received same from the black male. CI then gave "Pee Wee" the pre-recorded U.S. Currency. CI left the premises at that time.
6. The amount of suspected crack cocaine was submitted to the Cleveland Police Scientific Investigation Unit where it tested positive for cocaine.
7. In the experience and training of the affiant, narcotic drugs are frequently carried or concealed on people who are at locations where drugs are used, kept, or sold, and the size of useable quantities of drugs are small, making them easy to conceal on one's person. It is also affiant's experience that drug houses will be occupied by numerous individuals some of whom are drug users, some will be involved in the direct sales, some with the job of protecting the premises, some with preparing and packaging drugs, and some with the collection of the monies generated from the illegal activity. Further, it is the affiant's experience that named tenants of the dwelling will allow drug trafficking in the premises in return for drugs to support their drug habits. It is therefore necessary to search all persons in the premises.
8. Further, in the experience of affiant, persons who traffic in illegal drugs frequently keep records of illegal transactions and evidence of communications used in the furtherance of drug trafficking activity, including, but not limited to, pagers, cellular telephones, answering machines, and answering machine tapes in their homes and/or in their vehicles.
9. Further, in the experience of the affiant, persons who traffic in illegal drugs frequently keep weapons, such as firearms, on or about their person, and/or in their vehicles, or within their possession, for use against law enforcement officials, as well as other citizens.
10. Affiant avers that it is urgently necessary that the above-mentioned premises be searched in the night season forthwith to prevent the above named property from being concealed or removed so as not to be found, and for the safety of the executing officers."
It is ordered that the appellant recover from appellee its costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] State v. Brown (1992), 64 Ohio St.3d 649, 597 N.E.2d 510.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450, N.E.2d 1140.
[3] Roviaro v. United States (1957), 353 U.S. 53, 59,77 S.Ct. 623, 626, 1 L.Ed.2d 639, 644.
[4] State v. Williams (1983), 4 Ohio St.3d 74, 446 N.E.2d 779, syllabus.
[5] Id. 
[6] State v. Phillips (1971), 27 Ohio St.2d 294, 272 N.E.2d 347.
[7] (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667.
[8] State v. Roberts (1980), 62 Ohio St.2d 170, 178, 405 N.E.2d 247,253.
[9] State v. Feltner (1993), 87 Ohio App.3d 279, 281, 622 N.E.2d 15,State v. Parsons (1989), 64 Ohio App.3d 63, 69, 580 N.E.2d 800.
[10] Illinois v. McCray (1967) 386 U.S. 300, 307, 87 S.Ct. 1056, 1060,18 L.Ed.2d 62, 68, citing State v. Burnett (1964), 42 N.J. 377,201 A.2d 39.
[11] (2001), 143 Ohio App.3d 55; 757 N.E.2d 390.
[12] (July 18, 1991), Montgomery App. No. 11908, unreported.