JOURNAL ENTRY AND OPINION
{¶ 1} Pursuant to Crim.R. 12(K), the State of Ohio appeals from the order of the trial court which struck a portion of a search warrant and further determined that the remainder of the warrant did not provide probable cause for searching a residence purportedly linked to defendant Ramon Rivera. For the reasons set forth below, we affirm.
 {¶ 2} On June 18, 2003, Cleveland police obtained a search warrant for the rear upstairs apartment of a dwelling located at 1338 West 65th
Street. The affidavit in support of the search warrant, signed by Vice Unit Det. Michele Rivera, stated in relevant part, as follows:
 {¶ 3} "1. Affiant * * * was contacted by a Confidential Informant (CI), who indicated that a male known to CI was selling heroin. Said CI indicated * * * that the male is Hispanic and uses the nickname `Junior,' but his given name is Ramon.
 {¶ 4} "2. * * * CI exited the undercover vehicle and met with Junior and then returned to affiant and handed affiant a quantity of a light brown powdery substance, purported to be heroin * * *.
 {¶ 5} "4. Affiant avers that detectives then followed the male known as Junior to the above premises and watched as he entered.
 {¶ 6} "* * *.
 {¶ 7} "7. Affiant avers that within the past twenty-four hours, affiant again met with the same CI who * * * arranged to meet Junior at a location within the City of Cleveland.
 {¶ 8} "8. Affiant avers that after that call was made, detectives were placed outside the above address and observed a Hispanic male meeting the description of Junior or Ramon, exit the above premises and travel to the prearranged location in a 1987 Toyota Camry, maroon in color, to the prearranged meeting place. This is the same vehicle that Junior traveled in on the previous controlled purchase.
 {¶ 9} "9. Affiant * * * observed as CI exited the vehicle met with the same male * * * * and handed affiant a quantity of suspected heroin * * *.
 {¶ 10} "10. Detectives then surveilled Junior and followed him to the above premises, which he entered.
 {¶ 11} "* * *.
 {¶ 12} "13. Affiant avers that she has confirmed that the 1989 maroon Toyota Camry is registered to Naomi Perez according to the Ohio Bureau of Motor Vehicles. Affiant avers that the Cleveland Police Department has received many domestic violence complaints involving Naomi Perez and Ramon Rivera at the above address.
 {¶ 13} "14. Affiant avers that she confirmed that gas utility at the above premises according to Dominion East Ohio Gas Company is listed toNaomi Perez and advised affiant that there are two gas utilities at the above dwelling, one of which is listed as the upper, rear unit and the other which is the lower unit. There is no upper, front unit utility.
 {¶ 14} "* * * *." (Emphasis added).
 {¶ 15} On October 16, 2003, defendant was indicted pursuant to a four-count indictment which charged him with possession of less than five grams of cocaine, possession of more than ten but less than fifty grams of heroin, trafficking in heroin with juvenile and schoolyard specifications, and possession of criminal tools.
 {¶ 16} Defendant pled not guilty and moved to suppress the evidence obtained in connection with execution of the search warrant, arguing that the affidavit did not link him to that residence. The matter proceeded to an evidentiary hearing on May 5, 2004. At that time, counsel for defendant also asserted, pursuant to Franks v. Delaware (1978),438 U.S. 154, 155-156, 57 L.Ed.2d 667, 98 S.Ct. 2674, that the search warrant contained errors and misstatements and that the remainder of the warrant was insufficient to establish probable cause. In support of this motion, the defense established that in the affidavit in support of the search warrant Det. Rivera incorrectly indicated: (1) that defendant drove a 1989 Toyota Camry registered to Naomi Perez; in fact he was seen in a 1987 Toyota Camry registered to Naomi Morales; (2) that defendant and Naomi Perez had been involved in domestic disputes; in fact no such records existed; (3) that gas utility service at the premises was in the name of Naomi Perez.
 {¶ 17} Det. Rivera testified that she made a mistake when she marked the year of the vehicle as 1989, and that it was a 1987 Toyota Camry. A LEADS printout offered into evidence indicated, however, that Naomi Morales resides at 1838 West 65th Street, and not 1338 West 65th Street. Det. Rivera, claimed, however, that the LEADS system had listed Morales's address incorrectly. Det. Rivera further testified that gas service to one of the units was in the name of Naomi Morales. She also indicated that she inadvertently listed the owner as Naomi Perez, and that she intended to list "Naomi Morales." With regard to previous calls for assistance at the subject location, Det. Rivera testified that there were domestic violence calls, which did not result in police reports, concerning defendant and Brenda Perez. There was also a call concerning a problem with the alarm of a Honda Civic registered in the name of Brenda Perez, and the confidential informant reportedly told her that defendant frequently drove that car. The LEADS printout for Brenda Perez lists her address as 3391 West 117th Street, however.
 {¶ 18} Det. Rivera also testified that other detectives observed defendant leave 1338 West 65th Street immediately prior to selling heroin to the informant in the second controlled buy. She acknowledged that this building is a multi-unit dwelling.
 {¶ 19} Det. Rivera testified that there were "inconsistencies, mistakes, and typos" in the affidavit but that the mistakes were not intentional. She further explained that she had written the name "Naomi Perez" as the result of confusing the names "Naomi Morales" and "Brenda Perez." She stated that she believed that defendant had used the apartment at 1338 West 65th Street to store drugs.
 {¶ 20} The trial court determined that there were errors contained in paragraphs thirteen and fourteen of the affidavit in support of the search warrant and that these misstatements were included in reckless disregard for the truth. The court further determined that the remaining allegations were insufficient to establish probable cause.
 {¶ 21} The state now appeals and assigns two errors for our review. The State of Ohio's first assignment of error states:
 {¶ 22} "The trial court erred when it ruled that the misstatements contained in paragraph thirteen of the affidavit to the search warrant were Det. Rivera's reckless disregard for the truth."
 {¶ 23} An appellate court "is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." State v. Searls
(1997), 118 Ohio App.3d 739, 741, 693 N.E.2d 1184. However, an appellate court's review of the trial court's application of law to those facts is de novo. Id.; see, also, Ornelas v. United States (1996),517 U.S. 690, 699, 134 L.Ed.2d 911, 920, 116 S.Ct. 1657.
 {¶ 24} The Fourth Amendment to the United States Constitution provides:
 {¶ 25} "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
 {¶ 26} In Franks v. Delaware (1978), 438 U.S. 154, 155-156,57 L.Ed.2d 667, 98 S.Ct. 2674, the Court explained the probable cause requirement as follows:
 {¶ 27} "`[When] the Fourth Amendment demands a factual showing sufficient to comprise `probable cause,' the obvious assumption is that there will be a truthful showing.' This does not mean `truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be `truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."
 {¶ 28} Id., quoting United States v. Halsey, 257 F.Supp. 1002, 1005
(SDNY 1966).
 {¶ 29} In reliance on these principles, the Franks Court held that when the accused proves by a preponderance of the evidence that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that * * * the fruits of the search [must be] excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id.; see, also, State v. Waddy (1992),63 Ohio St.3d 424, 441, 588 N.E.2d 819.
 {¶ 30} "Reckless disregard" means that the affiant had serious doubts about the truth of an allegation. Id., citing United States v. Williams
(C.A. 7, 1984), 737 F.2d 594, 602.
 {¶ 31} In this matter, the affiant indicated that defendant had driven a 1987 Toyota Camry, registered to "Naomi Perez," that "Naomi Perez" resided in the rear, upstairs unit of 1338 West 65th Street, and that there had been domestic violence calls concerning defendant and "Naomi Perez." In actuality, no one named "Naomi Perez" had any connection to this case. Defendant allegedly drove a car registered to "Naomi Morales" but the LEADS printout did not indicate that she resided at 1338 West 65th Street, and no documentary evidence was offered to link her to this address. Det. Rivera also testified that there were domestic violence calls concerning defendant and "Brenda Perez," but the LEADS printout likewise fails to demonstrate that she resided at 1338 West 65th Street. In accordance with the foregoing, we conclude that competent, credible evidence supports the trial court's conclusion that there are false statements in paragraphs thirteen and fourteen of the affidavit and that they were made in reckless disregard of the truth. We further conclude that the trial court applied the correct law to this matter. In accordance with the foregoing, the first assignment of error is without merit.
 {¶ 32} The State of Ohio's second assignment of error states:
 {¶ 33} "After excising paragraph thirteen of the affidavit to the search warrant the trial court erred when it ruled that there was an insufficient nexus between the appellee and the residence located at 1338 W. 65th Street, up, to justify search of this residence."
 {¶ 34} As noted previously, even if the affidavit in support of a search warrant contains false statements made intentionally or recklessly, a warrant based on the affidavit is still valid unless, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause * * *." Franks v.Delaware, supra, 438 U.S. at 156, 98 S.Ct. at 2676, 57 L.Ed.2d at 672.
 {¶ 35} In State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus, established the standard for appeal of a magistrate's determination that probable cause existed to issue a search warrant:
 {¶ 36} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither the trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant."
 {¶ 37} Similarly, in Illinois v. Gates (1983), 462 U.S. 213, 238-239,76 L.Ed.2d 527, 103 S.Ct. 2317, the Supreme Court held that, in order to issue a search warrant, the task of the magistrate is:
 {¶ 38} "Simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for * * * [concluding] that probable cause existed.'"
 {¶ 39} In State v. Hunt (1984), 22 Ohio App.3d 43, 488 N.E.2d 901, this court noted that if a search warrant contains deliberate falsehoods and/or reckless misstatements and such falsehoods or misstatements are material to the finding of probable cause, the warrant will be invalidated.
 {¶ 40} In this case, the challenged statements were material to the finding of probable cause as they established the links from defendant to the car and to the apartment. Apart from these paragraphs, the affidavit established only that defendant went to the multi-family unit after the first drug sale and came from the apartment building immediately before the second drug sale. This alone is insufficient to establish probable cause to search any particular unit in the building. State v. Gales
(2001), 143 Ohio App.3d 55, 757 N.E.2d 390.
 {¶ 41} The second assignment of error is without merit.
 {¶ 42} The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., CONCURS. Gallagher, J., concurs in part and dissents inpart (see attached concurring and dissenting opinion.
 CONCURRING AND DISSENTING OPINION