OPINION
{¶ 1} Defendant-appellant, David E. Norman, was indicted by the Franklin County Grand Jury on one count of possession of crack cocaine in violation of R.C. 2925.11, a felony of the second degree. The indictment included a firearm specification pursuant to R.C. 2941.141. Appellant waived his right to a trial by jury and the case proceeded to a bench trial. At the conclusion of the trial, the court found appellant guilty of possession of crack cocaine and not guilty of the firearm specification. The court sentenced appellant to a definite term of two years of imprisonment. Appellant timely appealed the judgment of the trial court and asserts the following assignment of error for our review:
Appellant's conviction was not supported by the evidence in that the state failed to prove he was in knowing possession of contraband recovered during the execution of a search warrant at premises shared with others. Furthermore, the court erred in overruling appellant's motion for acquittal pursuant to Criminal Rule 29 and conviction was against the manifest weight of the evidence.
 {¶ 2} The facts adduced at trial are as follows. On August 14, 2002, appellant was wanted by police for questioning in a matter not related to the charges later brought against him in the within cause. On that date, Columbus Division of Police Special Weapons and Tactics ("S.W.A.T.") officers Enoch White and Robert Coffman conducted surveillance of a four-unit apartment building located at 1332 Courtland Avenue, having received information that appellant might be found there. At approximately 6:45 a.m. Officer White observed appellant crawl out of a second-story window at the rear of the building subject of the surveillance. Officer White later ascertained that the window corresponded to Apartment B.
 {¶ 3} Appellant jumped over two patio fences and proceeded southbound on Sixth Street toward Indianola Avenue. Officer White notified other S.W.A.T. personnel that the subject of their surveillance was moving southbound, then initially followed appellant in his vehicle. Officer White then exited his vehicle, and he and other S.W.A.T. personnel met and apprehended appellant at the intersection of Sixth and Indianola.
 {¶ 4} S.W.A.T. Officer Robert Coffman testified that he was a member of the surveillance detail assigned to look for appellant. He testified that after appellant's apprehension, Officer Coffman, along with uniformed patrol officers, sought and gained permission to enter Apartment B. He testified that approximately 10 seconds elapsed between the time he knocked on the door and the time one of the occupants — Dustin McCutcheon — opened it. Upon his entry into the apartment, Officer Coffman observed Melissa Denson sitting on the couch underneath a blanket, and a .380 handgun near the television, in plain view. He inquired of Ms. Denson whether any other weapons were present in the residence. She indicated that there was a .22 caliber semiautomatic gun underneath the couch, which the officer found upon inspection thereof. The officer also found ammunition for the .22 caliber gun underneath the couch. Officer Coffman proceeded to the back of the apartment, into the kitchen. He observed a tennis shoe print on the ledge beneath the kitchen window. Ms. Denson indicated to Officer Coffman that both she and McCutcheon resided in the apartment.
 {¶ 5} Detective William Snyder, of the Columbus Police Crime Scene Search Unit, testified that he collected evidence from 1332 Courtland Avenue, Apartment B, following appellant's apprehension. His search of the premises began that day at approximately 1:30 p.m. During the search, he took numerous photographs of the premises, and collected various items of physical evidence.
 {¶ 6} Detective Snyder testified that he retrieved from a shelf in the living room a .380 caliber handgun, loaded with a magazine and seven live rounds of ammunition. He collected from the same shelf a Jennings .22 caliber handgun with six live rounds of ammunition, along with a box containing 36 live rounds of .22 caliber ammunition. From the stereo in the living room, Detective Snyder collected a box containing 10 live rounds of .380 caliber ammunition. He collected two envelopes, which contained letters, from a blue container on a living room table. Detective Snyder also retrieved from the blue container a baggy containing white rocks.
 {¶ 7} Detective Snyder testified that he collected a black, orange and gold backpack from the southwest bedroom of the apartment. Contained within the backpack were the following items: a shirt, a pair of shoes, a hair brush, a beard trimmer, a blue baseball cap, the receipt from the purchase of the blue baseball cap, a white visor cap, a can of pomade, a baggy containing a white substance and, enclosed within an inside zipper pocket, an FIE .22 caliber revolver, loaded with six live rounds of ammunition, wrapped inside a pair of jeans shorts.
 {¶ 8} Detective Snyder tested the contents of the backpack for latent fingerprints. He obtained negative results on all items tested, with the exception of the can of pomade. He also obtained latent prints from the Jennings .22 caliber handgun and from the magazine of the .380 caliber handgun. He obtained negative results on the FIE .22 caliber handgun. Detective Snyder submitted the latent prints he had obtained to the Latent Identification Bureau for further evaluation.
 {¶ 9} On cross-examination, Detective Snyder testified that a prescription pill bottle and a cellular telephone were also present in the southwest bedroom at the time the backpack was seized; however, the pill bottle and the cellular telephone were not seized, and the detective did not ascertain the name of the person for whom the prescription was dispensed, or the name of the owner of the cellular telephone. He also testified that he did not seize the box in which he found the letters and a baggy containing a white substance. On redirect examination, Detective Snyder testified that he did not test the entire southwest bedroom (and its contents) for fingerprints because he had been informed that three individuals (including appellant) resided in the apartment.
 {¶ 10} The parties stipulated that the baggy retrieved from the blue container in the living room contained 1.8 grams of crack cocaine, and that the baggy retrieved from the backpack contained 20.5 grams of crack cocaine. The parties further stipulated that the .380 caliber pistol and the FIE .22 caliber revolver were operable, and the Jennings .22 semiautomatic handgun was not operable.
 {¶ 11} Dustin McCutcheon, then 19 years of age, testified that Ms. Denson is the mother of a high school acquaintance by the name of Daniel Battle. McCutcheon also met appellant through Battle. McCutcheon testified that on August 14, 2002, Denson, Battle and appellant all resided at 1332 Courtland Avenue, Apartment B. McCutcheon would sleep on the couch or on the floor of the apartment on weekdays, and lived at his own home on the weekends. At the time McCutcheon began this living arrangement — June 2002 — appellant was already residing in the apartment. McCutcheon testified that appellant lived in the apartment throughout the period of time from June 2002 to August 14, 2002. He testified that appellant and Battle shared the southwest bedroom and Ms. Denson slept in the other bedroom. McCutcheon kept very few of his own things at the apartment, and when he did keep items in the apartment he put them next to the couch upon which he slept. He testified that appellant kept his personal items in the southwest bedroom. According to McCutcheon, Battle had been out of town continuously for approximately the two weeks immediately preceding August 14, 2002.
 {¶ 12} McCutcheon testified that he was in the bathroom and Ms. Denson was in her bedroom when the police knocked on the apartment door. He testified that, prior to the moment when he heard the officers knocking, appellant had been asleep in his room, but that when McCutcheon peeked into the bedroom after he heard the knocking, he noticed that appellant was gone. McCutcheon testified that he had previously seen appellant wearing tennis shoes with the same appearance as the shoes police seized from the apartment. McCutcheon testified that he had not previously seen the backpack or the other items recovered from it. McCutcheon testified he was unaware of any member of the household having any prescription medication, but did testify that Battle owns a cellular telephone.
 {¶ 13} Columbus Police Detective Samuel Feldman testified that in August 2002, he sought appellant for questioning in a matter under his supervision as a detective in the homicide assault squad. It was Detective Feldman who initiated the surveillance of 1332 Courtland Avenue, Apartment B. Detective Feldman arrived at the apartment at approximately 11:30 a.m. on August 14, 2002, and assisted Detective Snyder in the search and evidence collection at the premises. Detective Feldman testified that one of the letters found in the blue container in the living room was addressed to David Norman at 1332 Courtland Avenue, had been sent by appellant's brother and was postmarked July 9, 2002. He testified that the other letter was from appellant and addressed to appellant's brother. Detective Feldman testified that, at some time after completion of his search of the apartment, he executed a search warrant for appellant's DNA by swabbing the inside of appellant's mouth with a DNA collection kit. This collection occurred at the Franklin County jail.
 {¶ 14} Detective Feldman testified that a search incident to appellant's arrest revealed that appellant was carrying on his person approximately $1,200 in United States currency. This piqued the detective's interest because, during his post-arrest interview of appellant, appellant stated that, other than odd jobs such as mowing lawns, he had not worked (at his job at a grocery store) in at least six weeks. Appellant initially denied ever having been in 1332 Courtland Avenue, Apartment B. Upon further questioning, he later admitted he had been there on occasion, but said he was in a different apartment "two doors down" on the morning of August 14, 2002. Finally, upon being confronted with statements to the contrary by Denson, McCutcheon and Officer White, appellant admitted he had been in Apartment B on that date. When confronted with the existence of the shoe print found on the windowsill, appellant admitted he had jumped out of the second-story window of Apartment B in order to elude police.
 {¶ 15} Detective Feldman testified that, at first, appellant denied having any property at 1332 Courtland Avenue, Apartment B. Later, he admitted that the two letters were his, but denied having any other property at the apartment, and specifically denied having any clothing there. He also denied ownership of the backpack, the crack cocaine and the firearms recovered from the premises.
 {¶ 16} When asked why he fled the premises, he told Detective Feldman that he and McCutcheon had been smoking marijuana earlier that morning. McCutcheon later told him that he thought the police were outside. He told the detective that his reaction to McCutcheon's statement was to walk down the steps, whereupon he saw what he thought to be an undercover police car, and heard police asking neighbors whether anyone knew of appellant's whereabouts. Detective Feldman confirmed that police had in fact been conducting a "knock and talk" at nearby homes, inquiring as to whether appellant had been seen in the area. Appellant told him that, upon hearing the officers "knock and talk" he ran up the steps and jumped out of the kitchen window before being apprehended approximately one-half block from the residence.
 {¶ 17} Detective Feldman testified that appellant stated his shoe size was 9½ or 10. When the detective confronted appellant with the fact that the shoes recovered from the backpack were size 9½, appellant did not respond.
 {¶ 18} On cross-examination, Detective Feldman admitted he did not ascertain the identity of the owner of the prescription pill bottle and cellular telephone that were found in the southwest bedroom. He also testified that he did not request DNA analysis of the plastic bags containing crack cocaine that the state claims appellant possessed. The detective never ascertained the shoe size of Daniel Battle. The detective also admitted that McCutcheon was initially also a suspect with respect to the possession charge, but stated that police did not pursue charges against him after DNA evidence linked appellant to the items found in the backpack. The detective admitted that more than one person could wear the same hat. Also on cross-examination, defense counsel elicited that, though McCutcheon had testified at trial that appellant had stayed at Denson's apartment the entire night preceding appellant's arrest, McCutcheon initially told Detective Feldman that appellant had only arrived there at approximately 6:00 a.m. that morning.
 {¶ 19} Amorenna Clarkson, a criminalist employed with the Columbus Police Crime Lab, testified regarding the results of DNA testing she performed at the behest of Detective Feldman. The parties stipulated that Ms. Clarkson is an expert in extraction analysis and determination of DNA evidence. Ms. Clarkson testified that people often slough off skin cells containing DNA when they sweat; thus, DNA is often present on articles of clothing, including hats. She further testified that she obtained DNA from the blue baseball cap, the white visor and the shirt that were found in the backpack taken from the southwest bedroom of 1332 Courtland Avenue, Apartment B.
 {¶ 20} The DNA extracted from the blue baseball cap and that extracted from the white visor matched the DNA sample taken from appellant. Ms. Clarkson testified that the DNA type found on the two hats — which matched appellant's DNA type — is found in only one in four sextillion persons in the African-American population, one in 11 sextillion persons in the Caucasian population and one in 16 sextillion persons in the southwestern Hispanic population.
 {¶ 21} Ms. Clarkson further testified that the shirt contained the DNA of more than one person, but appellant could not be excluded as a contributor of DNA to that item of clothing. She testified that the hairs taken from the brush found inside the backpack did not contain sufficient DNA to enable testing and analysis of same. She further testified that she was unable to extract any DNA from the beard trimmer found inside the backpack. She testified that one reason for the lack of extractable DNA on the beard trimmer is that shaving cream is a detergent and can cleanse skin cells from surfaces. She also stated that the hairs that came into contact with the beard trimmer may have only been fragments, and may not have contained any part of the root.
 {¶ 22} At the conclusion of the state's case, appellant moved the court for acquittal, pursuant to Crim.R. 29, which motion was overruled. Thereafter, appellant rested without presenting evidence in his defense. Appellant then renewed his Crim.R. 29 motion for acquittal, and the court overruled the renewed motion. The court found appellant guilty of possession of crack cocaine and not guilty of the weapon specification. The court stated that, in finding appellant guilty of possession of crack cocaine, the only crack the court considered to be appellant's was that found in the backpack; the court did not find that appellant possessed the cocaine found in the blue container in the living room.
 {¶ 23} Appellant argues that his conviction was not supported by sufficient evidence and that it was against the manifest weight of the evidence. He also argues that, because the evidence was insufficient, the court should have granted his Crim.R. 29 motion for acquittal. A motion for acquittal may be granted only where the evidence is insufficient to sustain a conviction. State v. Apanovitch (1987), 33 Ohio St.3d 19.
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 24} Whether the evidence is legally sufficient is a question of law, not fact. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia
(1979), 443 U.S. 307, 319, 99 S.Ct. 2781. As such, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227,2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79.
 {¶ 25} A manifest weight argument is evaluated under a different standard. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v. Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 35. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact-finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The evidence is not construed most strongly in favor of the prosecution. State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. The court engages in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence that could convince a reasonable trier of fact of the defendant's guilt beyond a reasonable doubt. Id. The discretionary power to grant a new trial based on the conviction being against the manifest weight of the evidence "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 26} In support of his argument that the evidence was legally insufficient to convict him, and that the trial court should have granted his motion for acquittal, appellant maintains that the state failed to prove his guilt beyond mere access to or occupation of the premises upon which the crack cocaine was found. He points out that the DNA evidence establishes only that appellant had worn each hat found in the backpack. Without more direct evidence, he argues, his "possession of the drugs in question remains a matter of speculation, not the required proof beyond a reasonable doubt." (Brief of appellant, at 10.)
 {¶ 27} The state argues that sufficient circumstantial evidence links appellant to the drugs in question. Specifically, the drugs were found in a bedroom utilized, at that time, solely by appellant, and they were found in a backpack that also contained personal items upon which appellant's DNA was found. The state points out that Battle had been out of town for several weeks, leaving appellant as the only occupant of the southwest bedroom. The state also points to the facts that DNA matching appellant's genetic profile was extracted from two hats found in the backpack where the crack was found; appellant could not be excluded as being a contributor of DNA extracted from a shirt contained in the backpack; and shoes found in the backpack were appellant's size, and appellant had previously been seen wearing them.
 {¶ 28} The state argues that the fact that all of these items were stored along with the cocaine, in appellant's bedroom, provides sufficient circumstantial evidence that appellant exercised dominion and control over the cocaine. The state also points out that appellant was carrying $1,200 in cash when he was arrested, even though his only income was from odd jobs, and he fled the apartment where the drugs were found upon being informed of the presence of police. These facts also support appellant's conviction, according to the state.
 {¶ 29} Pursuant to R.C. 2925.01(K), "possess" or "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession of a controlled substance may be actual or constructive. Statev. Mann (1993), 93 Ohio App.3d 301. A person has actual possession of an item when it is within his immediate physical control. State v. Messer
(1995), 107 Ohio App.3d 51. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.State v. Hankerson (1982), 70 Ohio St.2d 87, syllabus.
 {¶ 30} Circumstantial evidence alone may be sufficient to support the element of constructive possession. State v. Chandler (Aug. 9, 1994), Franklin App. No. 94APA02-172; Jenks, supra.
Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.
Jenks, supra, paragraph one of the syllabus.
 {¶ 31} "All that is required for constructive possession is some measure of dominion or control over the drugs in question, beyond mere access to them." State v. Burnett, Franklin App. No. 02AP-863, 2003-Ohio-1787, discretionary appeal not allowed, 99 Ohio St.3d 1515,2003-Ohio-3957, at ¶ 20, quoting In re Farr (Nov. 9, 1993), Franklin App. No. 93AP-201. Constructive possession can be inferred from a totality of the evidence where sufficient evidence, in addition to proximity, supports dominion or control over the contraband State v. Johnson (July 11, 1990), Summit App. No. 14371.
 {¶ 32} In the present case, the cocaine in question was found in a backpack that also contained two hats bearing DNA of a type found in one in four sextillion persons in the African-American population, one in 11 sextillion persons in the Caucasian population and one in 16 sextillion persons in the southwest Hispanic population. This DNA type matched that of appellant. Appellant could not be excluded as a possible contributor of DNA found on a shirt retrieved from the same backpack. Also found within the same backpack was a pair of shoes of appellant's size, and that matched the appearance of shoes McCutcheon had previously seen appellant wearing. Moreover, at the time the cocaine and the backpack were seized, the backpack was found in a bedroom then being solely occupied by appellant. Appellant immediately fled the premises upon being informed that police were nearby. In our view, the totality of the evidence adduced was sufficient to support a finding that appellant was guilty of the elements of the charged offense of drug possession, beyond a reasonable doubt.
 {¶ 33} We now turn to appellant's argument that his conviction was against the manifest weight of the evidence. In support thereof, he reiterates his arguments relating to sufficiency. He also argues that the evidence points to Dustin McCutcheon as the likely possessor of the drugs in question. He points out that certain aspects of McCutcheon's testimony conflict with the testimony of the police officers involved, and with their application for the search warrant, and asserts that McCutcheon had a motive and the opportunity to plant the drugs in question upon learning that police were in the area. Appellant further points out that appellant's initial reaction when questioned about the drugs was to say he believed they had been planted by "Dus." Thus, appellant argues, the manifest weight of all of the evidence does not support his conviction.
 {¶ 34} This argument goes primarily to the question of McCutcheon's credibility. Although we are permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, we must also give great deference to the fact-finder's determination of witnesses' credibility.State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28. In the present case, the trial court stated on the record that it had judged the credibility of the witnesses (Tr. at 206) and found "it is totally implausible that * * * [Dustin McCutcheon was] involved with the nap sack or with the * * * cocaine." (Tr. at 206-207.)
 {¶ 35} We disagree with appellant's contention that the evidence demonstrated a motive on the part of McCutcheon to "plant" the cocaine found in the backpack. Further, even given the several inconsistencies between McCutcheon's trial testimony and that of the police officers with respect to facts not directly bearing upon the existence of the cocaine in the apartment, the evidence does not so manifestly point to McCutcheon as the possessor of the drugs in question as to render us in disagreement with the trial court's finding of guilt. Accordingly, we find that appellant's conviction was not against the manifest weight of the evidence.
 {¶ 36} For all of the foregoing reasons, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Lazarus and Watson, JJ., concur.