[Cite as *State v. Pettaway*, 2018-Ohio-4241.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No. WD-17-040

      Appellee                          Trial Court No. 16 CR 292

v.

Chester Pettaway, Jr.                     **DECISION AND JUDGMENT**

      Appellant                          Decided:  October 19, 2018

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Chester Pettaway, Jr., appeals the June 20, 2017 judgment of the Wood County Court of Common Pleas which, following a jury trial convicting him of counts of drug trafficking and drug possession, sentenced him to a total of 11 years of imprisonment.  For the reasons that follow, we affirm.

**{¶ 2}** On July 21, 2016, appellant was indicted on six counts: two counts of trafficking in heroin (fifth-degree felonies), two counts of trafficking in cocaine (fifth-degree felonies), one first-degree felony count of trafficking in heroin with a forfeiture specification, and one count of possession of heroin (second-degree felony.) The charges stemmed from two controlled drug purchases by a confidential informant ("CI") working for the METRICH Enforcement Unit (Metro-Richland County ten-county drug interdiction unit), and the execution of a search warrant at a mobile home located in Fostoria, Wood County, Ohio. Appellant entered not guilty pleas to the charges.

**{¶ 3}** On September 12, 2016, appellant filed a motion to suppress all evidence stemming from the execution of the search warrant. Appellant argued that the warrant did not name the persons to be searched and seized and that the affidavit failed to provide legally sufficient cause linking appellant and the alleged crimes to the property. Following a hearing on the motion, on January 12, 2017, the motion was denied.

**{¶ 4}** A jury trial in the matter commenced on June 14, 2017, and the following relevant evidence was presented. Fostoria Police Detective Brandon Bell testified that he works with METRICH. Bell testified that in June 2016, he was "refamiliarized" with appellant through a CI. The CI indicated that a male individual known as PJ was selling drugs from the northwest-most trailer, located at lot 148, in a trailer park in Fostoria, Ohio. Detective Bell stated that it was common for individuals involved in illegal activities to use various nicknames. Detective Bell stated that based on the vehicle he

2.

observed at the trailer, he knew the woman who resided there and this led him to deduce that appellant resided there as well.

{¶ 5} Regarding the CI, Detective Bell stated that the individual had prior drug and legal issues. Bell stated that he had worked with the individual on 50-60 prior cases and that her information proved to be reliable in all of the cases.

{¶ 6} Detective Bell testified that on June 14, 2016, the CI contacted him and informed him that she could purchase drugs from PJ through a middle person identified as Ginger Loy. Ball testified that for controlled purchases multiple officers were involved in order to protect the informant and conduct surveillance. In this case, three officers were employed: one monitored the CI, one watched lot 148, and the third surveilled the Dollar General lot where the transaction was set to take place. Bell stated that prior to the drug buy, the informant is searched for contraband and is generally equipped with a recording device. The informant is also provided with traceable money to use in the transaction.

{¶ 7} As to the June 14, 2016 transaction, the CI indicated that the plan was to meet Loy at a local park and then Loy would transport the CI in her vehicle, a green Kia Soul, to the Dollar General parking lot where the transaction would take place. The Dollar General store is located on North Countyline Street in Fostoria, Wood County, Ohio, approximately 200 yards from lot 148. Detective Ball testified that when he was observing the Kia pull into the Dollar General lot, he was radioed that a black male had

left lot 148, got into a maroon Chevrolet TrailBlazer and was heading toward the Dollar General store.

{¶ 8} Detective Ball testified that Loy exited her vehicle and approached the TrailBlazer. After a brief interaction, Loy retuned to the Kia and left the parking lot. The TrailBlazer then returned to lot 148, and the male exiting the vehicle was identified as appellant. Following the encounter, the CI provided Detective Ball with a baggie of what appeared to be cocaine and a baggie of what appeared to be heroin. The baggies were placed into an evidence bag and sealed.

{¶ 9} Detective Ball testified that the next day he applied for a search warrant for the trailer at lot 148; it was signed by a judge. Prior to its execution and after being advised by the CI that another purchase under similar circumstances was possible, the officers prepared for and surveilled a near identical drug transaction. According to Detective Ball, the main difference was that a second individual who had pulled up in a Lincoln and who appellant met outside the trailer at lot 148, got into the TrailBlazer with appellant. Both transactions took less than five minutes.

{¶ 10} Following the second transaction, appellant's vehicle was stopped. The $200 marked buy-money was found on appellant's person as well as a small baggie of marijuana. At the same time, the search warrant was executed at lot 148. Appellant's girlfriend, her daughter, and appellant's young son were present.

{¶ 11} Detective Ball testified that they first secured the residence accounting for all individuals and any weapons. A K-9 was brought in to do a "free-air sniff" of the

4.

residence; he alerted several times. According to Ball, there was no evidence indicative of drug use, e.g., burnt spoons, syringes, or straws. Several items commonly used in drug trafficking were found including a scale, suspected cocaine and heroin, multiple cell phones, and plastic sandwich bags. The suspected drugs and scale were found in a coat consistent with appellant's size in the master bedroom closet. The bags were also in the master bedroom closet.

{¶ 12} Also in the trailer were several items of adult male clothing (no other adult males were living in the home), adult male shoes, photos of appellant and his girlfriend, flat bill baseball hats of the type appellant wore, and toys.

{¶ 13} During cross-examination, Detective Ball was questioned about the CI who had prior drug charges and was paid for the information. Ball was also questioned about the owner of the trailer and TrailBlazer, appellant's girlfriend. Ball admitted that the address on appellant's state identification card was not lot 148 and that no mail sent to appellant at that address was found. Finally, Detective Ball admitted that there was no video of appellant actually selling the drugs to the CI and that no search was conducted of the middle-person, Ginger Loy.

{¶ 14} The CI testified that in 2015-2016, she was addicted to heroin and was in trouble with the Fostoria Police Department for trafficking. The CI stated that in February 2016, she began working with the police by making controlled drug purchases from local dealers; this was done in exchange for being placed on probation rather than

serving jail time. The CI admitted that she was actively using drugs during the time of the buys but denied using her payment to purchase drugs.

{¶ 15} The CI testified that in June 2016, in speaking with other drug addicts she learned that PJ was supplying drugs. The CI then informed Detective Bell. On June 14, the CI stated that she met with police who provided her with a recording device and money and searched her. She then met with Ginger Loy who drove her to the Dollar General parking lot where Loy called PJ; he arrived within five to ten minutes. She gave Loy $100 and Loy returned with $50 in heroin and $50 in cocaine. The CI stated that she did not see who Loy got the drugs from. Following the transaction, the CI stated that she called Detective Ball; he picked her up, she gave him the drugs, and she was searched.

{¶ 16} The next day, the evening of June 15, the process was repeated. The CI testified that she called Detective Ball, they met and she was searched, given a recording device, and given $200. Loy picked her up and they again went to the Dollar General parking lot where Loy purchased and gave the CI $100 in cocaine and $100 in heroin. Loy took an amount from both drug purchases for her personal use.

{¶ 17} Police Detective Charles Boyer testified that on June 14, 2016, he conducted surveillance of lot 148 and was in radio contact with police surveilling the Dollar General parking lot. Boyer stated that he observed a maroon TrailBlazer parked at the residence; the vehicle left the trailer just after Boyer was radioed that Loy and the CI arrived at the Dollar General parking lot. Detective Boyer stated that at that point he

6.

observed the TrailBlazer leave the trailer and procced eastbound to the Dollar General lot which was approximately 200 to 250 yards away.

{¶ 18} Detective Boyer testified that the vehicles were together for several minutes and left at the same time with the TrailBlazer returning to lot 148. Boyer stated that he watched appellant exit the vehicle and enter the trailer.

{¶ 19} A controlled buy was set for the next day with a plan to arrest appellant and execute the search warrant at the trailer. Detective Boyer stated that his role was "controlling" the CI by conducting pre- and post-operational protocol. Boyer testified that he watched Loy pick up the CI and drive them to the Dollar General parking lot; Boyer parked across the street.

{¶ 20} Detective Boyer stated that he was radioed from the officer watching lot 148 that two black males had exited the trailer, gotten into the maroon TrailBlazer and were heading toward the Dollar General lot. Boyer stated that he saw the vehicle arrive and park but did not see anyone exit the vehicle. After several minutes the vehicle left and a radio dispatch was made to stop the vehicle. Detective Boyer testified that he then inventoried the evidence from the CI.

{¶ 21} Once the CI was released, Boyer went to lot 148 to assist with the search warrant; Boyer's role was to inventory all the evidence seized. Boyer stated that the items were then placed in the evidence room at the Tiffin Police Department and then sent to the Bureau of Criminal Investigation ("BCI") for testing.

7.

**{¶ 22}** Donald Joseph, a detective with the Seneca County Sheriff's Office and part of the METRICH drug task force unit, testified next. Detective Joseph testified that he was part of the June 14 and June 15, 2016 operations. On June 14, he conducted surveillance of the Dollar General parking lot. Joseph observed Loy's Kia Soul pull around the back of the store out of his sight. Shortly thereafter, Joseph observed the maroon TrailBlazer pull around behind the Dollar General store; it was there approximately 30 seconds and then both vehicles left.

**{¶ 23}** The next day, Detective Joseph stated that the cars again pulled behind the Dollar General store but that from his vantage point he was able to see Loy approach the TrailBlazer, lean into the driver's side for a "few seconds," and then get back in her car and leave.

**{¶ 24}** Detective Joseph stated that he was behind Officer Nelson when Nelson stopped appellant's vehicle. Joseph observed a small amount of what looked like marijuana in appellant's hand. Appellant also had money in his right front pants pocket which was consistent with the buy money. Appellant and the passenger, Cedric Yarborough, were then transported to the trailer where the search warrant was being executed.

**{¶ 25}** Detective Joseph testified that he photographed the premises prior to the actual search. After the K-9 was led through, officers began the search and upon finding a piece of evidence would have Joseph photograph the item. Joseph then testified to the photographs admitted into evidence.

8.

**{¶ 26}** Fostoria Police Officer Donald Dennis testified that he is a SRT (special response team) supervisor and K-9 handler and was engaged to aid in the June 15, 2016 search. Officer Dennis stated that once the trailer was secured and photographed he ran his K-9 through the house and it alerted to several locations where drugs were or had been located. Specifically, the dog alerted to the master bedroom closet; upon searching the closet, testifying officer Gabriel Wedge found a men's coat with suspected narcotics, a white powder substance, and a scale in the pockets.

**{¶ 27}** BCI forensic scientist Lawrence Rentz testified that he conducted chemical analyses of various substances submitted in connection with the controlled buys and the execution of the search warrant. Rentz testified that a plastic bag submitted on June 15, 2016, contained two substances: .26 grams of cocaine, and .12 grams of heroin, fentanyl, and acetyl fentanyl. Submitted on June 17, 2016, were two bags of unknown material: .49 grams of heroin, fentanyl, and acetyl fentanyl, and .43 grams of cocaine. Finally, and also submitted on June 17, 2016, were results from three plastic bags which were found to contain: 1.59 grams of cocaine, 5.42 grams of an unknown, uncontrolled substance, and 10.67 grams of heroin and 6.76 grams of cocaine.

**{¶ 28}** At the close of the state's evidence, appellant made a Crim.R. 29 motion for acquittal. The court denied the motion but modified the forfeiture sum from $966 to $335.

**{¶ 29}** Appellant presented the testimony of Corina Malagon who testified that she lived in the trailer at lot 148. Malagon testified that she lived there with her four

9.

daughters ranging in age from 17 to 4 years old. Malagon testified that she and appellant began dating in March 2016. She stated that during the relevant time period, appellant lived in Toledo with his grandmother. According to Malagon, when appellant came to visit her he would stay for one or two nights. Malagon stated that appellant did not have any clothing in drawers or closets in her room; he just had one or two outfits and some shoes. Malagon further testified that appellant has a young son (four at the time of the incidents) in Fostoria who resides with his mother.

{¶ 30} On the night of June 15, Malagon stated that during the course of the events she was in the bathroom getting ready for work. When her daughter yelled for her, she exited the bathroom and encountered police who had her sit on the couch. Malagon testified that the coat, a size large, where the drugs were found belonged to her 21-year-old son who, though he no longer lived at the house, had stored some of his old clothes in her closet. Malagon stated that appellant wore a size 2XL and that he liked to wear his clothing large.

{¶ 31} During cross-examination, Malagon was questioned about the contents of her closet; specifically, she denied knowledge of the sandwich baggies in her closet though they were next to her shoes. Malagon denied any knowledge of appellant's alleged drug trafficking. Appellant then rested and renewed his Crim.R. 29 motion for acquittal. The motion was denied.

{¶ 32} Following deliberations, the jury found appellant guilty of two counts of trafficking in cocaine (less than five grams), two counts of trafficking in heroin (less than

10.

five grams), one count of trafficking in heroin (between ten and 50 grams), and one count of possession of heroin (between ten and 50 grams[1].) On June 20, 2017, appellant was sentenced to consecutive 12-month sentences for the fifth-degree felonies and an 11-year imprisonment term for the first-degree felony. The consecutive sentences were ordered to be served concurrently to the 11-year sentence for a total of 11 years of imprisonment. This appeal followed.

{¶ 33} Appellant now presents four assignments of error for our review:

I. The trial court erred to the prejudice of appellant in denying his motion to suppress in violation of his rights under the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Ohio Constitution.

II. The trial court erred to the prejudice of appellant by improperly allowing Evid.R. 404(B) evidence to be introduced by the state.

III. The trial court erred in denying appellant's Rule 29 motion for acquittal at the completion of the state's case in chief.

IV. Appellant's conviction was against the manifest weight of the evidence introduced by the state at trial.

{¶ 34} In appellant's first assignment of error he argues that the trial court erred in denying his motion to suppress evidence seized at lot 148 pursuant to a search warrant.

---

[1] The possession and trafficking of heroin charges were merged at sentencing and appellant was sentenced on the trafficking charge only.

11.

Specifically, appellant contends that the affidavit fails to allege any drug activity taking place at the trailer. Appellant further argues that the search warrant was too vague in that it did not specify the persons to be searched or the items to be seized. The state counters that the affidavit provided sufficient probable cause to show that evidence of the crime of drug trafficking would be found at the location.

{¶ 35} Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The Ohio Supreme Court has identified the standard of review:

[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539. Id.

In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a

crime will be found in a particular place." (*Illinois v. Gates* [1983], 462 U.S. 213, 238-239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 followed.) *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus.

{¶ 36} Arguing that the affidavit securing the search warrant lacked sufficient probable cause, appellant asserts that it contained no evidence that any drug transactions had ever taken place at lot 148. The state conversely argues there was more than sufficient evidence demonstrating that appellant was seen leaving the trailer and within minutes arriving at the drug transaction. Appellant then retuned directly to the trailer.

{¶ 37} Supporting his argument, appellant relies on an Eighth Appellate District case addressing the issue of the sufficiency of a probable cause affidavit. *State v. Gales*, 143 Ohio App.3d 55, 757 N.E.2d 390 (8th Dist.). In *Gales*, two controlled drug purchases took place at locations other than the residence to be searched. The first buy was three months prior to the affidavit; the second was 72 hours prior. *Id.* at 58-59. The court concluded that the information regarding the first buy was too stale to support probable cause. *Id.* at 62. As to the second controlled buy, the court noted that there was no evidence linking the vehicle to the residence and that police observation of appellant entering and exiting the residence had no nexus to any ongoing criminal activity. *Id.* The court then determined that the affidavit lacked probable cause to support the search warrant. *Id.* at 62-63.

13.

**{¶ 38}** In this case denying appellant's motion to suppress the court stated that it reviewed the contents of the search warrant and affidavit and the suppression hearing testimony. The court found that the CI had worked with police for six months and had given reliable information; the CI stated that appellant lived at lot 148 and had sold narcotics from that location in the past, and drove a maroon SUV. The affidavit also chronicled the June 2016 drug transaction where appellant was observed leaving the trailer at lot 148, pull into the Dollar General lot, stay for approximately one minute in the area where Ginger Loy had parked her car, and return to lot 148. The affidavit claimed the entire trip was less than four minutes. In addition, the affidavit stated that a reliable CI confirmed that appellant was living at the trailer and had sold narcotics from the trailer in the "recent past."

**{¶ 39}** Reviewing the affidavit, we conclude that sufficient information linking the trailer to ongoing criminal activity was presented to the judge and supported the issuance of the search warrant. *Accord State v. Leavell*, 6th Dist. Erie Nos. E-15-030, E-15-031, 2016-Ohio-5275, ¶ 15.

**{¶ 40}** In addition, as requested in the affidavit, the search warrant provided for a search of "any persons, cell phones, and vehicles registered to persons or under the control of persons found inside the residence at the time the warrant is executed." Appellant contends that this provision is too vague; we disagree. The Supreme Court of Ohio has held that the "all persons" provision of a probable cause affidavit was supported where the residence was private and modestly sized. *See generally State v. Kinney*, 83

Ohio St.3d 85, 698 N.E.2d 49 (1998).  In the present case, the search warrant clearly provided that the residence was owned by Corina Malagon and was a "single story, single unit mobile home."  Thus, we find no error.

{¶ 41} Based on the foregoing, we conclude that the affidavit supported the judge's finding of probable cause and the trial court did not err in denying the motion to suppress.  Appellant's first assignment of error is not well-taken.

{¶ 42} Appellant's second assignment of error asserts that the trial court erred by allowing Evid.R. 404(B) evidence to be introduced by the state at trial.  Appellant argues that the admission of evidence regarding the investigating officers' familiarity with him prejudicially denied him a fair trial.  The state counters that the evidence was presented only to show the identity of appellant who had been using multiple pseudonyms.

{¶ 43} Initially, we note that questions regarding the admissibility of evidence are left to the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion.  *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.  Further, appellant did not object to the admission of such evidence; thus, the issue is precluded from being raised on appeal, unless the issue rises to the level of plain error.  *See State v. Underwood*, 3 Ohio St.3d 12, 13, 444 N.E.2d 1332 (1983); *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).  Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise."  *See* Crim.R. 52(B); *Underwood*, *supra*; *Long*, *supra*.

15.

{¶ 44} Evid.R. 404(B) provides:

(B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶ 45} We first note, as required under the rule prior to trial the parties discussed the introduction of such evidence following appellant's motion in limine. Appellant's counsel expressed concern over the potential for evidence of appellant's prior drug charges and convictions tainting the jury. The state countered that the purpose of any evidence introduced was to show how the police focused on appellant as the suspect. The court agreed stating: "I think that fits within 404(B). I think of necessity, especially since Chester is known as Pierre, law enforcement's got to be able to state why they knew that people referring to Pierre were really referring to Chester, and for the officer's credibility, why are they doing this stuff * * *."

{¶ 46} As discussed, during trial the state did not delve into appellant's criminal history and limited its responses as to how the officers knew appellant's identity.

16.

Accordingly, we find that the evidence complied with Evid.R. 404(B), thus there was no error, let alone plain error, in its admission. Appellant's second assignment of error is not well-taken.

{¶ 47} Appellant's third assignment of error argues that the trial court erred in denying his motion for acquittal pursuant to Crim.R. 29. Crim.R. 29(A) provides for an entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction. "An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that is used to review a sufficiency of the evidence claim." *State v. Reyes*, 6th Dist. Wood No. WD-03-059, 2005-Ohio-2100, ¶ 21, citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995). Sufficiency of the evidence is "'that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support a jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1433 (6 Ed.1990). In *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), the Ohio Supreme Court outlined the analysis required to apply this standard:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have

17.

found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.) *Id.* at paragraph two of the syllabus.

**{¶ 48}** In this assignment of error, appellant claims that the state did not produce sufficient evidence that he possessed and trafficked drugs. The possession statute, R.C. 2925.11, provides:

> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
>
> * * *
>
> (C) Whoever violates division (A) of this section is guilty of one of the following:
>
> * * *
>
> (6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of possession of heroin. The penalty for the offense shall be determined as follows:
>
> * * *
>
> (d) If the amount of the drug involved equals or exceeds one hundred unit doses but is less than five hundred unit doses or equals or exceeds ten grams but is less than fifty grams, possession of heroin is a felony of the second degree, and the court shall impose as a mandatory

18.

prison term one of the prison terms prescribed for a felony of the second degree.

**{¶ 49}** The drug trafficking statute, R.C. 2925.03, relevantly provides:

(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog;

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

* * *

(6) If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin, whoever violates division (A) of this section is guilty of trafficking in heroin. The penalty for the offense shall be determined as follows:

* * *

(e) Except as otherwise provided in this division, if the amount of the drug involved equals or exceeds one hundred unit doses but is less than five hundred unit doses or equals or exceeds ten grams but is less than fifty grams, trafficking in heroin is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree. If the amount of the drug involved is within that range and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in heroin is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

{¶ 50} As to possession of heroin, appellant argues that the state failed to provide sufficient evidence that he had actual or constructive possession of the heroin found at the trailer during the execution of the search warrant. Appellant further contends that his witness, Corina Malagon, established through her testimony that the jacket where the heroin was found was not appellant's it was her son's.

{¶ 51} We first note that possession may be established solely by circumstantial evidence and need not be irreconcilable with any reasonable theory of innocence. *See Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph one of the syllabus. Constructive possession can be inferred from a totality of the circumstances. *State v. Norman*, 10th Dist. Franklin No. 03AP-298, 2003-Ohio-7038, ¶ 31.

20.

**{¶ 52}** In the present case, the testimony and evidence presented at trial showed that appellant was staying with his girlfriend, Malagon, in her trailer at lot 148. Several items of his clothing were found in her room and his five-year-old son was in the trailer when the search warrant was being executed. He was seen leaving the trailer, driving to the Dollar General parking lot where the CI and Loy were waiting, and then returning directly to the trailer. At the same time, appellant was stopped and the $200 that the CI provided for cocaine and heroin was found in appellant's pocket.

**{¶ 53}** Similarly, this evidence was sufficient to support appellant's trafficking conviction. In addition to heroin, a scale was found in the same coat and plastic baggies were found in the bedroom closet. The marked funds that were in the possession of the CI were found in appellant's pants pocket immediately following his rendezvous with Loy.

**{¶ 54}** Based on the foregoing, we find that appellant's convictions were supported by sufficient evidence and the court did not err when it denied his Crim.R. 29 motion for acquittal. Appellant's third assignment of error is not well-taken.

**{¶ 55}** In appellant's fourth and final assignment of error, he essentially makes the same arguments as to his claim that the drug possession and drug trafficking convictions were against manifest weight of the evidence. In reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly

21.

lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 56} Upon review, we cannot say that the jury lost its way and created a miscarriage of justice in finding appellant guilty of drug possession and trafficking. Ample testimony was presented to demonstrate that appellant, on June 14 and June 15, 2016, sold cocaine and heroin to the CI and possessed the heroin which was found in the trailer at lot 148. The fact that the jury chose to believe the testimony of the state's witnesses over Malagon, was within its role as factfinder and we find no error. Appellant's fourth assignment of error is not well-taken.

{¶ 57} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

James D. Jensen, J.

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE


_____
JUDGE


_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.