**[Cite as *State v. Williams*, 2023-Ohio-4344.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No.  L-23-1035

     Appellee                                  Trial Court No.  CR0202201688

v.

Kenneth Williams                              **DECISION AND JUDGMENT**

     Appellant                                 Decided:  December 1, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Jerome Phillips, for appellant.

* * * * *

**ZMUDA, J.**

## I.      Introduction

{¶ 1} This matter is before the court on appeal from the judgment of the Lucas

County Court of Common Pleas, denying the motion to suppress of appellant, Kenneth

Williams.  Finding no error, we affirm.

## II.    Facts and Procedural Background

{¶ 2} Between December 11, 2021, and January 14, 2022, police conducted mobile surveillance of appellant, Kenneth Williams, after receiving a tip that an African-American male, known as "Four," was trafficking cocaine and other illegal narcotics in the city of Toledo.

{¶ 3} Ultimately, detectives arrested Williams on January 14, 2022, finding cocaine powder and some money in Williams' vehicle and on his person.  After his arrest, Toledo police petitioned for a search warrant of two key properties alleged to be occupied or used by Williams: 3319 Franklin Ave and 1736 Upton Ave.  The court granted the warrant based on the affidavit of Detective James – the officer primarily engaged in investigating Williams – and police searched the two properties, finding narcotics and various paraphernalia related to drug trafficking.

{¶ 4} On May 2, 2022, Williams was charged in a five-count indictment as follows: Count 1: Trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(a), a felony of the fifth degree; Count 2: Possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(a), a felony of the fifth degree; Count 3: Trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2) and (C)(9)(f), a felony of the first degree; Count 4: Trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(c), a felony of the second degree; and Count 5: Trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(e), a felony of the first degree.  Counts 1 and 2 arose from

2.

conduct occurring on or about January 14, 2022, the date of the traffic stop. Counts 3 through 5 arose from conduct occurring on or about January 18, 2022, the date police executed search warrants at the Franklin and Upton properties.

{¶ 5} On June 14, 2022, Williams appeared with counsel for arraignment in the Lucas County Court of Common Pleas and entered "not guilty pleas" on all charges. Williams later filed a motion to suppress, arguing police failed to establish probable cause under the search warrants because the warrants failed to identify key dates and places, relied on a confidential informant without sufficient corroboration, and demonstrated no nexus between the locations and criminal activity. Further, Williams raised issues of staleness relating to information provided by Detective Stauch concerning an October arrest outside the Lion's Den where the arrested individual stated he purchased fentanyl from "Four."

{¶ 6} On October 17, 2022, the state responded arguing a sufficient basis existed, based on facts gathered from the investigation and the corroboration of the informant's tips. Alternatively, the state argued the Fourth Amendment Good Faith Exception to the Exclusionary Rule applied, as it was reasonable for the officers to act on the warrant, even if technically deficient.

{¶ 7} The trial court heard argument on the suppression motion on November 3, 2022. Because appellant challenged the sufficiency of the search warrant affidavit, the trial court considered the challenge based on the four corners of the affidavit, and no

3.

witnesses were called. After hearing, the trial court denied the motion in a decision from the bench. The trial court acknowledged the lack of detail regarding the informant's reliability but found the Detective James' investigation corroborated the majority of the informant's information. In addition, the court accepted that evidence of criminal activity had been shown through the hand-to-hand transactions witnessed during surveillance, even without stopping or searching after witnessing the transactions. While noting neither the affidavit nor investigation was "the most thorough," the trial court determined, based on "the totality of the circumstances there existed sufficient probable cause that illegal narcotics and evidence associated with drug trafficking belong[ing] to Kenneth Williams was present at both 3319 Franklin Avenue and 1736 Upton Avenue."

{¶ 8} Williams requested findings of fact and conclusions of law from the court and on November 18, the court denied the request, relying on the reasoning explained in the ruling on the record.

{¶ 9} Thereafter, Williams withdrew his guilty plea on February 2, 2023. Of the original five counts against him, Williams plead No Contest to Count 3, Trafficking in a Fentanyl Related Compound in violation of R.C. 2925.03(A)(2) and (C)(9)(f), a felony of the first degree. The trial court accepted the plea, found Williams guilty, and sentenced Williams to a minimum prison term of 3 years, with a maximum prison term of 4 years and 6 months. Further, the court ordered Williams to be subject to up to 5 years but not

4.

less than 2 years mandatory post release control. The trial court entered a *nolle prosequi* as to Counts 1, 2, 4, and 5, and granted Williams credit for 20 days as jail-time credit.

{¶ 10} This appeal followed.

### III.    Assignments of Error

{¶ 11} Appellant now appeals the judgment, asserting the following assignments of error:

Assignment of Error No. 1: The trial court erred in denying Appellant's motion to suppress, filed October 3, 2023, as officers lacked probable cause in obtaining the search warrant.

Assignment of Error No. 2: The trial court erred by failing to address a challenge to warrants based, in part, on stale, unreliable information.

### IV.    Analysis

{¶ 12} Williams challenges the issuance of the search warrants[1], arguing a lack of probable cause and challenging the information within the affidavits as "stale, unreliable information." Additionally, Williams separately challenges one piece of information within the affidavits as "stale, unreliable information." For ease of discussion, we address the assignments of error in reverse.

---

[1] In oral argument before this court, Appellant suggests he disputes only the sufficiency of the warrant as to the Upton address. However, as no briefing or motion supports such a narrowing of the issues, we address probable cause for both addresses.

5.

**A. Staleness**

{¶ 13} Probable cause relates to facts and circumstances of a "presently existing condition" and cannot rely on information which has grown stale in the investigation. *State v. Gales*, 143 Ohio App.3d 55, 61, 757 N.E.2d 390 (8th Dist.2001), quoting *Sgro v. United States*, 287 U.S. 206, 210, 53 S. Ct. 138, 77 L.Ed. 260 (1932).

{¶ 14} Williams points to the conversation between detectives relating to an arrest made in October, 2021, outside the Lion's Den. On January 8, 2022, Detective James spoke to Detective Stauch, and Stauch recalled an individual he stopped and arrested in October. The person arrested indicated he had bought Fentanyl from "Four" in the Lion's Den. This, according to Williams, is stale information which ought not to have been considered in finding probable cause.

{¶ 15} We disagree with Williams on two grounds. Primarily, the alleged stale information Williams argues musters no attack on the sufficiency of the warrant, even if stale. According to Williams, if the information provided by Detective Stauch's traffic stop in October of 2021 was stale, the totality of the circumstances determination by the trial court is suspect – the entire test is punctured by bad information.

{¶ 16} However, even if the information provided by Detective Stauch was stale, its staleness would be limited in relation to the investigation conducted by Toledo Police and not in relation to the location of drug activity. The search conducted in the case concerns the Franklin and Upton addresses, not the Lion's Den.

6.

{¶ 17} Further, our review of the case law challenges the base assertion of staleness itself. In *United States v. Redmond*, the Sixth Circuit Court of Appeals identified factors for the staleness analysis, including: "the character of the crime (a chance encounter in the night or a regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Redmond*, 475 Fed. Appx. 603, 608 (6th Cir.2012),quoting *United States v. Spikes,* 158 F.3d 913, 923 (6th Cir.1998). Additionally, otherwise stale information which is corroborated by other information in the affidavit becomes "refreshed" for purposes of probable cause. *Id.*

{¶ 18} Applying these factors here, the October arrest cannot be characterized as stale information. Using the four-factor test from *Redmond*, we conclude: (1) the character of the crime leans against staleness as "Four" allegedly operated out of the Lion's Den Bar & Grill, which is not a "chance encounter in the night;" (2) the criminal more accurately could be described as "entrenched" as opposed to "nomadic," despite, the key details of the arrest and the individual's testimony when arrested are omitted from the warrant affidavit; (3) the thing to be seized leans toward staleness as drugs are perishable items; and (4) the place to be searched leans more toward secure operational base, as it seems reasonable to assume the Lion's Den was chosen for its ideal location for the sale of drugs. When cast in light of the factors from *Redmond*, Williams'

7.

behavior more reasonably would be described as an ongoing or continuous criminal enterprise utilizing the Lion's Den as a touchstone location in the operation. This lends credibility to the confidential informant's tip Four is operating out of the Franklin and Upton properties.

{¶ 19} Therefore, we find the Williams' second assignment of error not well-taken.

**B. Probable Cause to Support the Warrants**

{¶ 20} Williams challenges the trial court's decision, denying his motion to suppress, arguing the affidavits lacked sufficient probable cause. In general, when reviewing a denial of a motion to suppress, we consider the evidence in a light most favorable to the state. *Redmond* at 607, citing *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir.2006).

{¶ 21} Appellate review of a motion to suppress presents a mixed question of law and fact because the trial court assumes the role of trier of fact and is in the best position to resolve factual questions, like credibility of witnesses. Thus, we defer to the trial court's findings of fact if they are supported by competent, credible evidence, as an appellate court is precluded from substituting "its judgment for that of the magistrate." *State v. George,* 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus. Rather than conducting a de novo determination, "reviewing courts should accord great deference to the magistrate's determination of probable cause, and doubtful

or marginal cases in this area should be resolved in favor of upholding the warrant." *George* at paragraph two of the syllabus, citing *Illinois v. Gates,* 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 22} While we defer on findings of fact, however, whether the trial court reached the correct legal conclusion in analyzing the facts is reviewed *de novo* without deference to the trial court since the presence of probable cause is a legal determination. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Long*, 2020-Ohio-4090, 157 N.E.3d 362, ¶ 19 (6th Dist.); *see also State v. Ralston*, 4th Dist. Highland No. 10CA6, 2011-Ohio-3552, ¶ 10; *State v. Hobbs*, 4th Dist. Adams No. 17CA1054, 2018-Ohio-4059, ¶ 26.

{¶ 23} A trial court properly finds probable cause for a search so long as the "totality of the circumstances" leads to the conclusion contraband or evidence is likely located in a particular place. *Gates* at 230. This finding is often described as a "practical, nontechnical conception," a "process [that] does not deal with hard certainties, but with probabilities," and one which requires the magistrate or judge to simply "make a common-sense decision" resting on a "substantial basis," not on a "loose, vague, or doubtful bas[i]s of fact." *Gates* at 230-39; *United States v.* Griffith, 867 F.3d 1265, 1275-76, (D.C.Cir.2017). When reviewing the search warrant affidavit, offered in support of probable cause, the judge or magistrate determines the sufficiency by "evaluating only [the facts alleged within] the four corners of the affidavit and applying an objective

9.

reasonableness standard." *State v. Castagnola*, 145 Ohio St. 3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 39, quoting *United States v. Richards,* 659 F.3d 527, 559 (6th Cir.2011), fn 11.

**{¶ 24}** Williams emphasizes the trial court's description of deficiencies within the warrant affidavit in the court's ruling from the bench, denying the motion to suppress. Specifically, Williams points out the trial court found probable cause despite challenging the credibility of the confidential informant and the observations of police during the course of the investigation produced only "innocuous" information about Williams. Nonetheless, the affidavit contained sufficient facts to find probable cause including tips obtained from an anonymous informant, corroboration by the affiant's investigation and independent observation.

*1. Confidential Informant*

**{¶ 25}** In *City of Maumee v. Weisner*, the Ohio Supreme Court categorized informants into three groups: the anonymous informant, the known informant, and the identified citizen informant. "Although the distinctions between these categories are somewhat blurred," and the United States Supreme Court "discourages conclusory analysis based solely upon these categories," with the category relevant "to an informant's reliability." *City of Maumee v. Weisner*, 87 Ohio St. 3d 295, 300, 720 N.E.2d 507 (1999).

10.

{¶ 26} Courts have afforded more credibility to the citizen informant over the known informant and the known informant over the anonymous informant, but the category of informant is "just one element in the totality of the circumstances." *State v. Tidwell*, 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, ¶ 32. While the categorical classifications "are sometimes blurred" the classification is not determinative, but nonetheless instructive and a tool to assist the ultimate determination of an informant's reliability. *Tidwell* at ¶ 39, citing *Weisner* at 302; *State v. Cook,* 2d Dist. Clark No. 2019-CA-28, 2019-Ohio-3918, ¶ 12.

{¶ 27} Williams' argument would be persuasive if the warrant affidavit only contained the confidential informant's tips. The facts in this case, however, do not. The warrant affidavit of Detective James contained much more than confidential informant tips, including police corroboration and independent observation of behavior which is beyond "innocuous."

{¶ 28} The confidential informant, according to Detective James, relayed valuable information to spark the beginning of the investigation of Williams. Both of the addresses under the search warrant were identified by the informant as well as both of Williams' vehicles. Additionally, the connection between "Four" and Williams was confirmed by the informant. Thus, the confidential informant certainly contributed to the information police had but does not satisfy probable cause on its own.

11.

*2. Police Corroboration and Independent Investigation*

{¶ 29} Between the dates of December 11, 2021, and January 6, 2022, the informant provided tips to the police the presence regarding a drug-dealer in Toledo called "Four." The informant indicated "Four" drives a maroon Mercury-type vehicle which is usually parked near Hudson Street; that "Four's" named could be "Kenny" and his dealings are sometimes done out of the Lion's Den Grill & Bar; and "Four" possibly stays at 1736 Upton Avenue. The informant later confirmed that Kenneth Williams is "Four," based on a photo identification.

{¶ 30} To corroborate the tips, detectives gathered or witnessed additional facts between the time of the initial tip in December and January 14, 2022. First, the informant identified a picture of 3319 Franklin St. as "Four's" house and detectives observed a man matching "Four's" general description driving a 2005 maroon Mercury-type vehicle with an Ohio License Plate of JNY5166, and a white Dodge Charger, parking both at the Franklin address. Next, Detectives witnessed the same man drive the white Charger from the Franklin address to the Lion's Den. Police then showed a booking photo to the informant and the informant confirmed "Four" as Williams.

{¶ 31} Subsequently, Detective James found "Kenneth Williams" used the 1736 Upton Ave. address and the same address had been used on "Multiple reports, the most recent being 10-17-21" including Williams' Driver's License/State Identification.

12.

{¶ 32} Detectives also conducted lengthy surveillance, tracking Williams' movements between the Franklin property, the Lion's Den, the Upton Property, and a known drug location. Based on this surveillance, detectives witnessed Williams entering and exiting the Lion's Den before it was open, entering and exiting a known drug location and driving directly to the Upton property, where he entered and stayed briefly before driving away, and conducting what appeared to be hand-to-hand transactions immediately after exiting both the Franklin and Upton properties. Detectives observed Williams walk from the Franklin property to interact with a car parked in front of the property and observed Williams exit the Upton property, drive a short distance away, and interact with two individuals who approached Williams' car.

{¶ 33} Ultimately, the extensive investigation led to the gang task force initiating a traffic stop after observing another hand-to-hand transaction between Williams and occupants of a second vehicle. During the traffic stop, police discovered cocaine and cash in Williams' possession, and Williams identified his address as the Upton property.

{¶ 34} Williams repeatedly describes the information corroborated by detectives as "innocuous" or "neutral." In *State v. Nunez*, 180 Ohio App. 3d 189, 2008-Ohio-6806, 904 N.E.2d 824 (6th Dist.), we determined "[t]he events observed in surveillance were too neutral in nature to corroborate the informants' tips." *Nunez* at ¶ 25. In *Nunez*, police observed individuals entering and exiting an apartment, with one individual "holding his arm close to his waistband 'as if he was carrying something under his jacket.'" *Id.* at ¶

15. The state argued this was corroboration that Nunez was a drug supplier. We disagreed, and found the warrant was issued in error. *Id.* at ¶ 25.

{¶ 35} However, when addressing whether the Good Faith Exception applied, we determined there was competent, credible evidence supporting the trial court's finding that officers executed the warrant in good faith and we ultimately affirmed the trial court's judgment. *See Nunez* at ¶ 33.

{¶ 36} Here, detectives' surveillance and investigation yielded much more information, including a continued monitoring of hand-to-hand transactions at the Franklin address or direct travel to the Franklin and Upton addresses before and after such transactions. Additionally, the observations supporting the affidavit are beyond "neutral" conduct or "innocuous" activity, with attestations of drug transactions based on the detectives' training and experience.

{¶ 37} When corroborated, reliability of an informant's tip becomes more reliable, since the corroboration "lends credence to the remaining unverified portion of the informant's story by demonstrating that the informant has, to the extent tested, spoken truthfully." *State v. Ralston*, 4th Dist. Highland No. 10CA6, 2011-Ohio-3552, ¶ 14. Even innocent activity can become suspicious in light of a prior tip via corroboration. *Id.* Finally, courts "have consistently recognized the value of corroboration of details of an informant's tip by independent police work" as part of the totality-of-the-circumstances analysis. *Gates,* 462 U.S. at 241, 103 S.Ct. 2317, 76 L.Ed.2d 527. In *United States v.*

14.

*McPhearson*, the Sixth Circuit Court of Appeals found probable cause was supported when an unverified tip is corroborated by independently corroborated information from police officers. *McPhearson*, 469 F.3d 518, 524 fn 3 (6th Cir.2006); see also *Ralston* at ¶ 14.

{¶ 38} Thus, despite Williams' assertion, challenging the credibility of the informant fails to undermine the finding of probable cause as most of the relevant information within the warrant affidavit was gathered or corroborated by independent police investigation. Williams, then, more accurately disputes the nexus-requirement connecting the clearly corroborated information of criminal activity with his conduct and the two properties in the search warrant.

**C. Nexus of Criminal Activity**

{¶ 39} Probable cause requires a showing of a "nexus" between the criminal activity and the place to be searched, not "merely that the owner of property is suspected of crime." *McPhearson* at 524. This is to ensure the magistrate "perform his 'neutral and detached' function and not merely serve as a rubber stamp for the police." *Id.* at 524, citing *Aguilar v. Texas*, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). In order to satisfy the nexus-requirement, the affidavit must describe circumstances which indicate why evidence of illegal activity will be found in a particular place. *State v. Phillips*, 10th Dist. Franklin No. 15AP-1038, 2016-Ohio-5944, ¶ 14.

15.

**{¶ 40}** Williams argues the trial court failed to identify the nexus between criminal activity and his residences, aside from his status as a "known drug dealer." In support, he notes the trial court mentioned the surveillance established his "connection to these houses and cars, but it was mostly innocuous." He further relies on the trial court's concern that police did not make any stops or arrests following the witnessed drug transactions. Nonetheless, the trial court found the totality of the circumstances led to probable cause existing for both the Franklin and Upton addresses. Admittedly, in the very next sentence, the court stated "Kenneth Williams was a known drug trafficker and those were his home bases likely to obtain evidence of Drug Trafficking and Contraband."

**{¶ 41}** While the status of "known drug dealer" makes it easier to find a nexus between one's residence and criminal drug activity, *Phillips* at ¶ 14, citing *United States v. Gunter*, 266 Fed.Appx. 415, 419 (6th Cir.2008), "a suspect's 'status as a drug dealer, standing alone,'" is insufficient to demonstrate a nexus to support probable cause. *United States v. Brown*, 828 F.3d 375, 383 (6th Cir.2016), citing *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir.2005). Williams presses this point by citing *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005), which stated:

> Where, as here, the warrant affidavit is based almost entirely on the
>
> uncorroborated testimony of unproven confidential informants (none of
>
> whom witnessed illegal activity on the premises of the proposed search),

16.

the allegation that the defendant is a drug dealer, without more, is insufficient to tie the alleged criminal activity to the defendant's residence. To reiterate, the informant's testimony was corroborated, distinguishing *Frazier* from the present case. Further, the trial court's reference to a "known drug dealer" followed the court's determination regarding the warrant affidavit, and was not addressed as a basis in establishing probable cause.

{¶ 42} In *United States v. Ellison*, 632 F.3d 347 (6th Cir. 2011), the court found a nexus between criminal activity and residences when a drug transaction occurred outside the home and the defendant walked back into their house afterward. In the court's words:

> These incriminating actions are inextricably connected to the residence for which the search warrant was sought. From these actions, the affiant and the issuing judge could infer there was a fair probability that drugs were being stored in the residence or that drug trafficking was taking place from the residence, such that a search of the residence would be likely to yield contraband or evidence of a crime.

*Ellison* at 349. Here, Williams engaged in a hand-to-hand transaction in front of the Franklin address and returned back inside afterward. In connection to this nexus, on two occasions Detectives witnessed Williams drive between the Franklin address and the Upton address during or after suspected drug transactions. Therefore, a nexus of fair probability of locating contraband or evidence of a crime and the Franklin address, and

17.

by extension the Upton address, can reasonably be drawn given the facts in the warrant affidavit.

{¶ 43} Given the corroboration of the information within the four corners of the warrant affidavit and the nexus between criminal activity and the Franklin and Upton addresses, the trial court had a substantial basis under the totality of the circumstances to find probable cause and deny the motion to suppress.

### D. Good Faith Exception to the Exclusionary Rule

{¶ 44} The exclusionary rule for violations of the Fourth Amendment is "designed to deter police misconduct rather than to punish the errors of judges and magistrates." *United States v. Leon*, 468 U.S. 897, 916, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The rule's purpose is not met if the officer acted with objective good faith in obtaining a search warrant from a judge or magistrate and did not extend beyond its scope; in such cases, there is no police misconduct to deter. *Id.* at 920-21.

{¶ 45} Courts have understood *Leon* to create 4 situations or contexts where the good faith exception does not apply–namely: (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable ("bare bones affidavit"); or (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. *McPhearson*, 469 F.3d at 525.

18.

{¶ 46} Here, the State asserts the test of Good Faith is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *State v. Gales*, 143 Ohio App.3d 55, 62-63, 757 N.E.2d 390 (8th Dist.2001), quoting *Leon* at 922-923.

{¶ 47} Williams asserts the warrant affidavit was so lacking in indicia of probable cause that belief in its valid issuance would be unreasonable.

{¶ 48} However, since we find the trial court could properly find probable cause on the merits, there is no need to address the applicability of the Good Faith Exception, and decline to do so.

{¶ 49} Therefore, we find Williams' first assignment of error not well-taken.

## V. Conclusion

{¶ 50} For the forgoing reasons, we affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

Gene A. Zmuda, J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.