[Cite as *State v. Pettaway*, 2024-Ohio-3041.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No.  L-23-1241

    Appellee                                 Trial Court No. CR0202201878

v.

Antwuan Pettway                         **DECISION AND JUDGMENT**

    Appellant                                Decided:  August 9, 2024

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Randy L. Meyer, Assistant Prosecuting Attorney, for appellee.

Neil S. McElroy, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal of a May 16, 2022, motion to suppress judgment of the

Lucas County Court of Common Pleas, determining, in relevant part, that appellant failed

to satisfy the "substantial preliminary showing" that the search warrants' supporting

affidavits contained false statements knowingly made and, in conjunction, finding that the supporting affidavits furnished a substantial basis in support of the trial court's finding of probable cause for issuance of the search warrants. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Antwuan Pettaway, sets forth the following two assignments of error:

"1: The trial court erred when it determined that its review of the motion to suppress was limited to the four corners of the affidavit when the defendant made a substantial preliminary showing that the affiant recklessly omitted significant facts from the affidavit for the search warrant.

"2: The trial court erred [] when it determined that the affidavit for the search warrant provided a substantial basis for concluding that probable cause existed to issue the search warrant."

{¶ 3} The following undisputed facts are relevant to this appeal. This case stems from a long-term, high-volume drug trafficking operation conducted by appellant from his West Toledo apartment, triggering law enforcement surveillance and controlled buys from appellant by the narcotics unit of the Toledo Police Department ("TPD"). Over the course of 2020-2021, during which the TPD surveillance and investigation of appellant occurred, considerable information was gleaned, gathered, and verified, all consistently showing that appellant was engaged in cocaine and fentanyl trafficking.

2

**{¶ 4}** In April, 2020, TPD first learned of appellant's drug trafficking activities. Detective Stephen Malaczewski ("Malaczewski"), a narcotics officer with the TPD, was informed by a confidential source that appellant was trafficking in cocaine and fentanyl from his apartment. The source simultaneously provided Malaczewski with the license plate number and description of appellant's vehicle. Malaczewski's subsequent check of BMV records verified appellant's ownership of the vehicle, and the vehicle's registration at appellant's address.

**{¶ 5}** On April 6, 2020, in order to begin testing the veracity of the information that had been provided regarding appellant, TPD successfully conducted a controlled buy of cocaine from appellant at appellant's apartment by the confidential source. The drugs purchased from appellant were subsequently tested and confirmed to be cocaine.

**{¶ 6}** Given the collaborating evidence regarding appellant's drug trafficking activities, TPD commenced undercover surveillance of appellant and appellant's apartment. Assigned officers immediately observed a consistent, significant volume of traffic, pedestrian and motor vehicle, going in and out of appellant's apartment, all for brief time intervals, consistent with drug trafficking transactions. In conjunction, officers likewise observed appellant conduct brief "hand-to-hand" transactions with multiple persons from his motor vehicle. At this juncture, two additional confidential sources informed TPD that appellant was trafficking in cocaine and fentanyl from his apartment. These informants likewise provided TPD with appellant's correct address, telephone number, and motor vehicle information.

3

{¶ 7} Surveillance of appellant's activities continued in order to enable TPD to accumulate sufficient information prior to requesting search warrants. On October 25, 2021, Malaczewski was engaged in surveillance of appellant and appellant's apartment. Malaczewski observed appellant drive away from his apartment in a vehicle different from appellant's normal vehicle. Accordingly, he checked the second vehicle's license plate number with BMV records, verifying appellant's additional ownership of the second vehicle. Malaczewski followed appellant and observed him make a series of brief stops at multiple locations, reflective of drug trafficking transactions.

{¶ 8} On November 1, 2021, Malaczewski was conducting surveillance of appellant and appellant's apartment. Malaczewski again observed appellant travel to numerous different locations and consistently depart each location after a brief period of time. Upon appellant's return to his apartment, Malaczewski likewise observed a steady stream of different persons enter appellant's apartment, remain for a brief period of time, then depart, reflective of drug trafficking transactions. In addition, during the same timeframe, a fourth confidential source informed TPD that appellant was engaged in the trafficking of cocaine and fentanyl and provided TPD with appellant's correct address, telephone number, and motor vehicle information.

{¶ 9} On November 2, 2021, Malazcewski was engaged in surveillance of appellant and appellant's apartment. He observed multiple vehicles arrive, leave their engines running, enter appellant's apartment, and then depart after a few minutes. Based upon the accumulation of 2020-2021 surveillance observations, the four confidential

4

sources, and the controlled buy of cocaine from appellant, all indicating that appellant was engaged in drug trafficking, TPD conducted a traffic stop of a person who had just left appellant's apartment after briefly going inside. During the November 2, 2021 traffic stop, the individual acknowledged having just purchased cocaine from appellant, and the individual conveyed to TPD appellant's correct name and address.

{¶ 10} On November 5, 8, 10, 12 and 16, Malazcewski again engaged in surveillance of appellant. On each of these days, law enforcement surveillance likewise observed numerous individuals briefly stop at the apartment, and also observed appellant travel in his motor vehicle from the apartment to numerous different locations, stopping briefly at each destination.

{¶ 11} On November 16, 2021, based upon approximately 18-months of surveillance of appellant, during which numerous drug trafficking transactions were observed, a 2020 successful controlled buy of cocaine from appellant occurred, a 2021 traffic stop of a customer leaving appellant's apartment confirmed that appellant had just sold cocaine, and consistent information provided by four separate confidential sources was verified, all confirming appellant's trafficking in cocaine and fentanyl, TPD determined that it had accumulated sufficient incriminating information against appellant in support of search warrant requests in furtherance of the investigation.

{¶ 12} On November 16, 2021, Malaczewski submitted three affidavits in support of search warrants encompassing appellant's apartment and both of his motor vehicles. Each of the three identical affidavits for a search warrant chronologically set forth in

5

precise detail the nature and scope of the law enforcement surveillance of appellant, appellant's apartment, and appellant's activities. The affidavits specifically outlined in detail the multitude of consistent observations, and subsequent collaboration, all indicative of appellant's trafficking in cocaine and fentanyl. The affidavits show that TPD surveillance of appellant extended from April, 2020, through November 16, 2021. The affidavits were presented to the trial court on the same day that the surveillance concluded, November 16, 2021. Based upon the four corners of the affidavits, they were approved and signed by the trial court.

{¶ 13} On November 18, 2021, the search warrants were executed. During the execution of the search warrants, officers recovered commercial quantities of cocaine, fentanyl, heroin, related drug paraphernalia $5,500.00 cash, a firearm, an extended magazine, and ammunition.

{¶ 14} On May 26, 2022, based upon the forgoing, appellant was indicted on one count of trafficking in cocaine, in violation of R.C. 2925.03, a felony of the first degree, one count of possession of cocaine, in violation of R.C. 2925.11, a felony of the first degree, one count of aggravated drug trafficking, in violation of R.C. 2925.03, a felony of the second degree, one count of aggravated drug possession, in violation of R.C. 2925.11, a felony of the third degree, one count of trafficking in fentanyl, in violation of R.C. 2925.03, a felony of the first degree, one count of possession of fentanyl, in violation of R.C. 2925.11, a felony of the first degree, one count of trafficking in heroin, in violation of R.C. 2925.03, a felony of the first degree, one count of possession of heroin, in

6

violation of R.C. 2925.11, a felony of the second degree, one count of possession of weapons while under disability, in violation of R.C. 2923.13, a felony of the third degree, and one count of receiving stolen property, in violation of R.C. 2913.51, a felony of the fourth degree.

{¶ 15} On November 1, 2022, appellant filed a motion to suppress. On April 17, 2023, the trial court conducted the suppression hearing. In primary support of the motion to suppress, appellant emphasized that during the traffic stop of the individual who had just left appellant's apartment, during which the individual acknowledged having just acquired cocaine from appellant, the cocaine itself was not recovered from appellant's person. Paragraph eight of the search warrant affidavits attests, in relevant part,

> On or about November 2, 2021, this affiant was conducting surveillance at [appellant's apartment] and observed vehicles arriving at the location and leaving their vehicles running while the operator ran inside. About a minute later this affiant observed the same individual exit the building and leave the location in a quick manner. Moving surveillance was conducted on the vehicle and a traffic stop was conducted for moving violations. The operator of the vehicle admitted that [the individual had] purchased cocaine from [appellant at appellant's residence].

{¶ 16} Accordingly, during the suppression hearing, the following exchange occurred during Malaczewski's testimony:

Q. That individual is stopped for a traffic violation?

7

A. They were, yes.

Q. And was questioned?

A. Yes.

Q. And made a statement that you used saying that he had purchased drugs from my client at that unit?

A. Purchased cocaine, yes.

Q. And did you secure the cocaine?

A. He did not have it on him.

Q. [] Paragraph eight does not have an indication that no drugs were recovered, does it?

A. It just says what the [vehicle] operator told me, that they purchased cocaine from [appellant].

{¶ 17} Based upon the foregoing, appellant argued that paragraph eight of the affidavit should be construed as appellant knowingly providing a misleading and false statement in the affidavit. Notably, appellant engaged in no follow-up inquiry in an effort to determine whether the affiant learned what had become of the cocaine. It is unknown from the record, and from appellant's own questioning during the suppression hearing, whether the individual who had purchased the cocaine had consumed it, ejected it, or concealed it. All that is known is that the cocaine was not recovered from the individual's person after the admission to acquiring it from appellant. Appellant's position that this scenario should be construed as an intentional, false representation by the affiant is unaccompanied by supporting evidence.

{¶ 18} On May 16, 2023, the trial court granted, in part, and denied, in part, appellant's motion to suppress. The trial court held, in relevant part, "The court finds that

8

the defendant has not made a substantial preliminary showing that the affidavit contains false statements that were made knowingly. As such, the court limits its review in this matter to the four corners of the affidavit." This appeal ensued.

{¶ 19} In the first assignment of error, appellant argues that the trial court erred in its motion to suppress determination that appellant failed to make a substantial preliminary showing that the affidavit contained false statements, knowingly made, necessary to the probable cause finding.

{¶ 20} In support of the first assignment of error, appellant specifically states, "The writer of the affidavit [affiant] acknowledged that he did not include the fact that no contraband was found on the driver who was the subject of the traffic stop in paragraph 8 of the affidavit. Worse, the affiant provided no reason for the exclusion and was elusive * * * when questioned about the exclusion."

{¶ 21} Contrary to appellant's characterization, and further noting that appellant's premise underlying the first assignment of error is unsupported by legal authority, we note that the record shows that when questioned on the issue, affiant clearly, plainly stated that the cocaine was not recovered from the individual during the traffic stop. Appellant's position on appeal that his own tactical decision to decline to make further inquiry of affiant regarding the possible whereabouts of the cocaine, in conjunction with affiant's omission that the cocaine was not recovered, should now be construed as an intentional, false representation on the part of affiant is unpersuasive.

9

**{¶ 22}** As this court held in *State v. Long*, 2020-Ohio-4090, ¶ 22 (6th Dist.), "[R]eview of the issuing judge's probable cause determination -- both at the trial and appellate court levels -- is limited to the information found within the four corners of the affidavit," in those cases in which the search warrant is issued solely upon the information provided by the affiant and contained in the affidavit, such as the instant case.

**{¶ 23}** In conjunction, this general presumption of the validity of search warrant affidavits can be overcome. As this court held in *State v. Holt*, 2020-Ohio-6649, ¶ 17 (6th Dist.),

> A reviewing court may look outside of the four corners of the affidavit and conduct an evidentiary hearing only if the defendant makes a substantial preliminary showing that (1) the affidavit contains false statements that were necessary to the finding of probable cause, and (2) the applicant made the statements knowingly and intentionally or with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, L.Ed.2d 667 (1978).

**{¶ 24}** In applying *Holt* to this appeal, we find that the record clearly shows appellant's failure to satisfy either prong of the *Holt* test. With respect to the first prong, appellant has not alleged, and does not argue on appeal, that the affiant made a false statement in the affidavit, irrespective of whether or not any such statement was necessary to the finding of probable cause. Rather, appellant merely cites to additional

10

information not contained in the affidavit, namely, that the cocaine purchased from appellant by the individual subjected to a traffic stop upon departing appellant's apartment, was not recovered during the traffic stop. Appellant's layers of conjecture regarding what may or may not have become of the cocaine, and what, if anything, underpinned affiant's omission that the cocaine was not recovered, does not constitute a false statement [by omission] by the affiant. Further, given that there is no allegation of an actual false statement by the affiant, the second *Holt* prong, consideration of the level of intent underlying any arguable false statement, is moot.

{¶ 25} Based upon the forgoing, we find that the trial court correctly concluded that appellant failed to make a substantial preliminary showing that the affidavit contained a false statement necessary to the finding of probable cause, and, therefore, review of the probable cause determination was necessarily limited to the information found within the four corners of the affidavit.

{¶ 26} Wherefore, we find appellant's first assignment of error not well-taken.

{¶ 27} In appellant's second assignment of error, appellant similarly argues that the trial court erred in determining that the search warrant affidavits provided a substantial basis for concluding that probable cause existed for issuance of the search warrants.

{¶ 28} In support of the second assignment of error, appellant summarily argues, "The first three paragraphs contain stale information. Information that, at the time of the issuance of the warrant, was 19 months old."

11

{¶ 29} As a preliminary matter, we note that the search warrant affidavits specifically detail surveillance activities of ongoing suspected drug trafficking that occurred on an ongoing basis, extending from April, 2020, to November 16, 2021. It is delusive to cast the entirety of the search warrant affidavit information as stale based upon the earliest of the numerous surveillance dates set forth in the affidavits. It remains unchanged that surveillance continued, and fresh observations were made, up to and including November 16, 2021, the day that the affidavits were presented and the search warrants were requested. As such, the search warrants that are disputed as being based on stale information, were actually issued, in part, on same-day information.

{¶ 30} Further, the search warrant affidavits set forth surveillance dates and observations indicative of drug trafficking activities occurring on November 1, 2, 3, 5, 8, 10, 12 and 16, 2021, respectively. Thus, appellant's claim that the search warrants were improperly issued based upon "19 month old" surveillance information is refuted by the record.

{¶ 31} In addition, as pertains to appellate review of staleness claims, as this court held in *State v. Swain*, 2013-Ohio-5900, ¶ 45 (6th Dist.),

> In determining whether information in support of an affidavit is stale, courts have considered the character of the crime, the criminal, the thing to be seized, as in whether it is perishable, the place to be searched, and whether the affidavit relates to a single isolated incident or ongoing criminal activity." In conjunction, as recently elaborated by this court in

*State v. Williams*, 6th Dist. Lucas No. L-23-1035, 2023-Ohio-4344, ¶ 17,

"In *United States v. Redmond*, the Sixth Circuit Court of Appeals identified

factors for the staleness analysis, including: the character of the crime (a

chance encounter in the night or a regenerating conspiracy?), the criminal

(nomadic or entrenched?), the thing to be seized (perishable and easily

transferable or of enduring utility to its holder?), [and] the place to be

searched (mere criminal form of convenience or secure operational base?)

*United States v. Redmond*, 475 Fed. Appx. 603, 608 (6th Cir. 2012), quoting

*United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998).

{¶ 32} In applying the above-quoted staleness test to the instant appeal, the record shows that appellant was engaged in a regenerating activity. Appellant engaged in ongoing, high volume drug transactions of a similar nature. The record further shows that appellant was not nomadic, he was entrenched. Appellant's ongoing base of operations was his Toledo apartment. The bulk of appellant's customers came to appellant's apartment, with appellant sometimes traveling locally to the balance of customers. The record shows that a considerable portion of the items to be seized were nonperishable. The search warrant inventory list included a Ruger 9mm pistol, a Taurus 9mm pistol, an extended magazine, ammunition, $5,400.00 cash, a blue digital drug scale, assorted drug paraphernalia, and gun holsters, in addition to the 293g. of cocaine, 30g. of fentanyl, 15g. of heroin, and 15 methamphetamine tablets. Lastly, the record

13

shows that appellant's apartment served as a "secure operational base" for appellant's drug trafficking activities in 2020-2021.

{¶ 33} Based upon the forgoing, we find that the evidence shows that the *Williams* factors, as applied to this case, demonstrate that the disputed search warrant affidavits were not improperly rooted in stale information. Wherefore, we find appellant's second assignment of error not well-taken.

{¶ 34} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                                                            
_____
JUDGE

Myron C. Duhart, J.                  
_____
JUDGE

Charles E. Sulek, P.J.                    
_____
CONCUR.                                                   
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

14